FRANK ALBERS, Appellant, v. CITY OF ST. LOUIS.

Division One, July 3, 1916.

1. **SPECIAL TAXES: Power of City.** The city must look to its charter for its power to levy a special tax on land, and must abide by the limitations upon those powers which are therein expressed.

2. ——: ——: **Boulevard: Non-Abutting Property.** The charter of St. Louis provides that the benefit district against which the cost of opening and establishing a boulevard may be assessed shall be limited to the property fronting or bordering on such boulevard; and if the highway is in fact a boulevard, and not a street, property which does not front thereon cannot be legally assessed with special taxes for its establishment.

3. ——: **Boulevard: Definition.** The fact that the ordinance denominates the highway a boulevard does not make it such, nor does the fact that it denominates it a street make it a street. The judicial inquiry relates to things, not names. The word "boulevard" is used in its descriptive sense in the St. Louis charter, and means a way designed for pleasure as well as for commercial intercommunication, and having the scenic features which please rather than profit. A highway, lying entirely outside of the business portion of the city and needing no widening to accommodate its trafic, becomes a boulevard when widened from 60 to 200 feet and converted into a "service roadway 30 feet wide for general lawful purposes of public travel" and "a pleasure driveway, separated from said service roadway by space for planting trees and shrubbery," on which there shall be no "other than pleasure driving."

4. ——: ——: **Judgment in Condemnation: Finality As to Benefit Assessments.** A judgment of the circuit court assessing damages for property taken in widening a street into a boulevard, and in assessing benefits against property within the benefit district not taken, according to the report of the commissioners and the publication notice of the city counselor, is not final as to benefits. The primary object of the proceeding is the condemnation of lands necessary to the widening of the street; incidentally, the benefit to lands not taken is assessed in the same proceeding. As to the land taken and the assessment of damages therefor, the judgment is final; as to the assessment of benefits against lands not taken, it is only prima-facie evidence of the liability of the property-owner, and like other prima-facie evidence is rebuttable; and where the proceeding was in connection with the establishment of a boulevard, a property-owner whose lands do not front thereon may maintain an action to have cancelled special tax bills issued against them as a cloud thereon.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

REVERSED AND REMANDED.

*William L. Bohnenkamp* and *Benjamin H. Charles* for appellant.

(1) "A person injuriously affected by an ordinance may show that its passage was obtained by fraud or other unlawful means, or for an unlawful purpose; and the fraud which will invalidate an ordinance is shown by proof of fraud, defined to be the wilful doing of an unlawful act." Kansas City v. Hyde, 196 Mo. 507, 7 L. R. A. (N. S.) 639; State ex rel. v. Gates, 190 Mo. 555; Glasgow v. St. Louis, 107 Mo. 203; McQuillin on Mun. Corps., sec. 379, pp. 833, 835, sec. 2127, pp. 4526, 4527; 21 Am. & Eng. Ency. Law (2 Ed.), p. 978; People ex rel. v. Creiger, 138 Ill. 401. The unlawful act pleaded in the case at bar was the attempted substitution of a benefit district, for the establishment of a boulevard, not recognized by the law; a district different from the benefit district fixed by the city's charter for the boulevard. (2) The city's charter fixed the benefit district for the creation of a boulevard, confining it to lands fronting or bordering thereon. St. Louis Charter, art. 6, sec. 1 (Rombauer's Code, 1912, p. 352). The petition charges that "Kingshighway Northeast" was widened and opened as a boulevard; and therefore no district other than that established by law could lawfully be designated. And no property outside such district fixed by the charter could be deemed to be benefited; and therefore could not be assessed with benefits. St. Louis v. Realty Co., 259 Mo. 136; Railroad v. Portland, 25 Ore. 229. The notice of the city counselor that the commissioners had established a benefit district was, therefore, insufficient and illegal. It attempted to establish a benefit district not authorized by the charter. The designation of an unauthorized benefit district is fatal to the assessments. St. Louis v. Brinckwirth, 204 Mo. 305. (3) The repealing ordinance is void because of the city's fraudulent

intent to assess, for what was to be a boulevard in fact, property outside of the boulevard benefit district, on the pretense that the improvement was merely the widening of a street. Repealing the boulevard ordinance containing restrictions as to traffic was not conclusive that the street was not to be a boulevard. There could still be a boulevard without the restrictions prescribed in the boulevard ordinance. St. Louis v. Realty Co., 259 Mo. 135. A false recital in an ordinance is not conclusive. Kansas City v. Hyde, 196 Mo. 513. So also the implication in the repealing ordinance that the increase of width in Bircher Street was merely to widen that highway as a street is not conclusive. It may be shown that this widening was designed by the city to create a boulevard without complying with the boulevard provisions of the charter. The courts will look through any sham. Kansas City v. Hyde, 196 Mo. 513; Gas Co. v. Kansas City, 198 Fed. 515. And will not tolerate abuses of power. 22 L. R. A. (N. S.) 173; Bennett v. Marion, 106 Iowa, 632. (4) If the opening or widening of a proposed street is but a part of a general scheme, the court should know what that scheme is, in order to appreciate the value of the particular street in question. Kansas City v. Hyde, 196 Mo. 505; Kansas City v. Railroad, 230 Mo. 375. (5) If this ''Kingshighway Northeast'' was not intended to be a boulevard, then the amount of land taken for mere street purposes was excessive. The determination of the amount necessary for that purpose is subject to review by the courts. Bennett v. Marion, 106 Iowa, 632; Grafton v. Railroad, 22 L. R. A. (N. S.) 1. (6) The action of the court in the Baker case, approving the report of the commissioners fixes the amount of the tax, ''but there is no further judgment.'' St. Louis v. Brinckwirth, 204 Mo. 298. (7) St. Louis v. Baker was dual in character. (a) As to those defendants whose land was to be taken in the widening, the proceeding

was a judicial one. (b) As to those whose land was not taken, but against which assessments were sought to be laid, the proceeding was merely a tax assessment proceeding. This distinction as to the duality of the condemnation provisions of the St. Louis charter runs through many of the recent cases. St. Louis v. Brinckwirth, 204 Mo. 297; St. Louis v. Calhoun, 222 Mo. 53; St. Louis v. Busch, 252 Mo. 220; Jefferson City v. Wells, 263 Mo. 251. (8) Even in those cases where this distinction is not made, the judgment, so-called, as to assessments for benefits is not held to be final as to "the validity and regularity of the proceeding." Eyssell v. St. Louis, 168 Mo. 620; St. Louis v. Ranken, 96 Mo. 497; St. Louis v. Realty Co., 175 Mo. 67. (9) The petition attacks Ordinance 24224 as void, and thereby attacks the jurisdiction of the court in the Baker case, both as to the subject-matter and as to the person. The city virtually begs the question when it urges that the judgment in the Baker case is not subject to collateral attack.

*Charles H. Daues* and *Truman P. Young* for respondent.

(1) The judgment assessing benefits in the case of City of St. Louis v. James E. Baker, in the circuit court, was a final judgment fixing the benefits chargeable against plaintiff's property, and said judgment is not subject to collateral attack in this proceeding. St. Louis v. Realty Co., 259 Mo. 14?: Searcy v. Clay County, 176 Mo. 493. (2) The notice given to the owners of property to be assessed for benefits was sufficient to confer jurisdiction in the Baker case, and property owners within the district were charged with notice thereafter of all proceedings in the case. Eyssell v. St. Louis, 168 Mo. 612; Brinckwirth v. St. Louis, 204 Mo. 313; St. Louis v. Realty Co., 259 Mo.

140; St. Louis v. Calhoun, 222 Mo. 53; 2 Lewis on Eminent Domain (3 Ed.), sec. 585. (3) The repeal of ordinance number 22948, establishing a boulevard, was not in violation of section 1 of article 6 of the city charter. St. Louis v. Christian Brothers College, 257 Mo. 541. (4) The question whether a highway shall be opened as a street or as a boulevard, is a question addressed to the legislative discretion of the city government, and is not subject to judicial review. St. Louis v. Brown, 155 Mo. 555.

BROWN, C.—This is a suit for the cancellation of certain special tax bills against the plaintiff's land in the city of St. Louis, the apparent lien of which is alleged to be a cloud upon the title. The tax bills were issued against seven parcels of land described in the petition, to the aggregate amount of $469.40, and are founded upon a special assessment of benefits to said land in a proceeding for the widening of Bircher Street from Euclid Avenue to Florissant Avenue in said city from 60 feet, its original width, to 200 feet, under ordinances which changed its name to King's Highway Northeast. None of the land fronted or bordered upon said street, which was outside the business district, and upon which there was little commercial traffic.

A general demurrer was sustained to the petition, and the plaintiff declined to plead further. Final judgment for defendant was entered, from which this appeal is taken.

The petition states, in addition to these general facts, that the defendant, by authority of a vote of the people of said city, duly authorized and issued its negotiable bonds in the sum of $500,000, to be exclusively devoted to the establishing, opening and construction of King's Highway Boulevard, to meet that portion of the cost and expense which by law the defendant was required to pay, and that the proceeds

of said bonds were paid into the treasury of the city. That thereupon the defendant ordained and passed a certain ordinance numbered 22,948, entitled, "An ordinance to change present Bircher Street from Euclid Avenue to Florissant Avenue into a boulevard, to be known as 'King's Highway Northeast,' and to widen said boulevard, and to regulate the use of said boulevard, and to provide penalties for violating the provisions of this ordinance."

Section one provided: "Bircher Street from Euclid Avenue to Florissant Avenue, in the city of St. Louis, Missouri, is hereby changed into a boulevard to be known as 'King's Highway Northeast.'" Section two provided that said boulevard, "King's Highway Northeast," be widened to include certain parcels of land described, making its width 200 feet. It further provided that the present Bircher Street from Euclid Avenue to Marcus Avenue should be "a service roadway, for general lawful purposes of public travel," and that from Marcus Avenue to Florissant Avenue there should be "service roadways 30 feet wide for general lawful purposes of public travel," and "a pleasure driveway, separated from said service roadways by space for planting trees and shrubbery, and constructing sidewalks in a manner hereafter to be provided for by the Board of Public Improvements," and that on the part of the boulevard restricted to pleasure driving, it should be unlawful to do or cause to be done any other than pleasure driving, or to use the same for certain general traffic set out at length in the ordinance. There were also other traffic restrictions unnecessary to mention.

It also stated that this ordinance was a part of a general scheme for the establishment of a boulevard extending northwardly and southwardly almost the entire length of the city. That although the proceeds of the sale of the $500,000 of bonds were lawfully ap-

plicable to the payment of the benefits which the defendant should be required to pay for the widening and opening of said King's Highway as a boulevard and for no other purpose, a large part of it was used by defendant for other purposes and no portion was applied to the opening as a boulevard and widening of Bircher Street, although that was a part of the boulevard for the establishment and opening of which the said bonds were voted, issued and sold.

That the proceeds of the bonds having been exhausted without the expenditure of any part thereof to pay the benefit assessment for which the city might be liable in the opening of that part of the King's Highway Boulevard which included Bircher Street, the defendant city, for the purpose of raising the funds therefor by assessment against a benefit district to be formed for that purpose under the guise of the subterfuge that this part of the King's Highway Boulevard was a common street and not a boulevard within the meaning of its charter, passed on March 16, 1909, Ordinance No. 24,224, entitled, "An ordinance to repeal Ordinance Number Twenty-two Thousand Nine Hundred and Forty-eight, entitled, 'An ordinance to change present Bircher Street from Euclid Avenue to Florissant Avenue into a boulevard, to be known as "Kingshighway Northeast," and to widen said boulevard and to regulate the use of said boulevard, and to provide penalties for violating the provisions of this ordinance,' approved March twenty-seven, nineteen hundred and seven, and to enact in lieu thereof, an ordinance to change the name of Bircher Street from Euclid Avenue to Florissant Avenue to 'Kingshighway Northeast,' and to establish, open and widen said Kingshighway Northeast from Euclid Avenue to Florissant Avenue." The first section repealed the former ordinance and the second is as follows: "Bircher Street from Euclid

Avenue to Florissant avenue is hereby changed to 'Kingshighway Northeast.' "

Section three establishes the boundary of King's Highway Northeast practically the same as the boulevard of the same name established by· ordinance No. 22,948, and thereupon a proceeding was begun to condemn the land to be taken and establish the benefit· district upon which to assess the cost substantially as provided by the charter and ordinances of the city. The lands of plaintiff were included in this assessment. That the petition was sufficient in form and detail to present the questions which we shall notice in this opinion is not questioned by the parties in brief or argument.

I. The most important of these questions relates to the validity of the ordinance No. 24,224 under which this assessment is made. The city must look to its charter for its power to levy its tax, and must abide by the limitations upon those powers which are therein expressed.

Boulevard: Special Taxes.

It is presented in this case by the fact that the Legislature, in conferring upon it its charter powers, has authorized it to establish and open "boulevards" but has, in the same section (Sec. 1, art. 6), provided that the benefit district against which the cost of such opening may be assessed shall be limited to the property fronting or bordering on such boulevard; while in cases of the opening of streets and alleys which do not come within the description of boulevards, the benefit district may include and the cost be levied upon other property in the neighborhood, as was done in this case. The plaintiff insists that his property is not subject to taxation for the establishment and opening of King's Highway Northeast, because it is within the description of a boulevard, as used in the charter, and is consequently expressly excluded from the rule prescribed in case of those highways described in the same instrument as

streets and avenues, in which the Legislature has pre-
scribed another and totally inconsistent rule. It thus
becomes the duty of the city to observe this distinc-
tion in substance as well as in name.

The word "boulevard," in its descriptive sense,
which is the sense in which it is used in the statute
and with which we have to deal, is well understood,
and implies a way designed for pleasure as well as
for commercial intercommunication, and having the
scenic features, which please rather than profit. Per-
haps the definition we find in the New International
Dictionary, "A broad avenue in or around a city, es-
pecially one decoratively laid out with trees, belts of
turf, etc.," is as expressive of its nature as anything
that could be said. It is these aesthetic features
which constitute the foundation of the special system
of taxation applied by charter of the city of St. Louis.
Their park-way features are especially available to
those whose homes border them, while the scenic
drive which they afford is available to the entire city
as well as to those who reside a block away. Limi-
tations imposed upon their commercial use make them
less available in that respect to those who reside or
do business in the neighborhood outside their imme-
diate vicinity than ordinary well improved streets.
For these and perhaps other reasons as good the
Legislature has seen fit to impose the cost of estab-
lishing and opening them upon the adjoining owners
and the city at large, and to exempt property which,
like that of the plaintiff, receives little benefit from
their establishment and maintenance. The Legisla-
ture has made the distinction in the exercise of its
constitutional powers and we can only inquire of its
motives to aid us, when in doubt, to interpret its lan-
guage. If, under the ordinance No. 24,224, King's
Highway Northeast is a "boulevard" within the leg-
islative meaning of the word the city had no power
to tax the land of plaintiff to pay the cost of open-

ing it, for that power was not only withheld in the charter, but its exercise was expressly forbidden. In considering the question we must remember that we have to do with *things* rather than with names, for the Legislature is as powerless to impose such an assessment for the opening of a boulevard by naming it a street as it would be to impose a special tax for a cemetery by naming it a park. The charter provision rests upon the thing itself and it cannot be disobeyed by the mere manipulation of the nomenclature in which its commands are expressed.

The petition avers that King's Highway Northeast, while called in the ordinance a street, is in fact a boulevard, and that calling it a street is a mere subterfuge adopted by the Municipal Assembly for the purpose of evading the charter and gives several particulars which, in the opinion of the pleader, supports the general charge. It states, in substance, that Bircher Street lay entirely outside the business portion of the city, and that it needed no widening to accommodate its traffic. To show that this was the opinion of the Municipal Assembly it cites the ordinance changing it to a boulevard, which devoted all the space outside its present width for purposes of ornamentation and pleasure, and made it a part of a general scheme for a park-way through the greater portion of an extensive and populous city. It then charges an interval of two years, during which the fund provided to meet the city's portion of the cost of acquiring the additional lands expressly devoted to a pleasure drive-way and scenic features had become exhausted and the adoption of the present plan for acquiring the same land for the same ultimate purpose, by a fund to be raised by taxation upon the plaintiff's land and that of others similarly situated. After this should be done the power of the Municipal Assembly to return it to the status of a boulevard and to provide for its improvement and use as such

is ample and unquestioned. That the petition charges that the additional land for which the plaintiff is called upon to assist in paying is not needed for any public use for which his land could be lawfully assessed, and that the proceeding, including the repealing ordinance, is a subterfuge to compel him and those whose lands are similarly situated to contribute the greater part of the cost of establishing and opening a boulevard, is plain, and is sufficient, to put the city to its defense upon the facts, unless the plaintiff is foreclosed by the judgment of the circuit court in the condemnation suit in which the benefits were assessed against his land.

II. Looking at the section of the charter to which we have already referred, we observe that the proceeding in which this tax was assessed is dual in its character. Its primary and principal object is the condemnation of lands necessary to the opening of the street. For this purpose the court must proceed to obtain jurisdiction of the owners according to its uniform practice as prescribed by statute. Incidentally the benefits to lands not taken are assessed in the same proceeding. No process is issued out of the court for this purpose, but five days' notice is given by the city counselor by publication that benefits to lands situated within certain limits will be assessed by the commissioners on a day named. This is required by ordinance, and not by any statute of the State, nor is it under the control of the court in which the proceeding is pending. That this should constitute the foundation for a valid and final judgment at law fixing a lien upon the land of the owner is inconceivable, while it is easy to understand that it might well constitute the foundation for the valid assessment of a tax subject to the universal rule that its validity must depend upon the legislative power upon which it rests, and if there be a fair and reasonable doubt as to the existence of such power it must be

resolved in favor, of the taxpayer and against the
municipality claiming it. This principle has lately
been stated by this court with citations of its previous
decisions which render their repetition unnecessary.
[St. Louis v. Realty Co., 259 Mo. 126, l. c. 136.] In
the appropriation to the public use, and the assess-
ment of the compensation and damages therefor, the
court proceeds by regular judicial process, along the
well defined lines of its constitutional jurisdiction "as
to matters of law and equity," while in levying a
special tax upon property to be benefited, to pay the
amount of compensation and damages ascertained and
awarded, it acts as an agency of the State in the ex-
ercise of the power of municipal taxation. [St. Louis
v. Brinckwirth, 204 Mo. 280, l. c. 297-8; St. Louis v.
Calhoun, 222 Mo. 44, l. c. 53; Jefferson City v. Wells,
263 Mo. 231.] This case furnishes an excellent illus-
tration of the nature of this power. The court pro-
ceeds without process. Instead, the agent of the tax-
ing municipality publishes a general notice of the
most formal character, and upon the expiration of
the time named in it goes to the court and asks its
assistance through its commissioners, in assessing
the tax. Under these circumstances it is natural that
the Legislature should realize that the participation
of a court of general jurisdiction in the proceeding
might mislead as to the effect of the judgment, which
it evidently did, and expressly declared its effect in
the same section which authorized it. It provides:
"The sums to be paid by the owners of property es-
pecially benefited by the improvement, as ascertained
by the commissioners, shall, when the report of the
commissioners shall be confirmed by the court, as
hereinafter provided, be prima-facie evidence of the
liability of the property charged therewith to the
extent and amount therein specified, and shall be and
remain until paid, a lien from the date of the final
judgment of the circuit court on the property so

charged, and shall be collected as provided by ordinance.'' [Charter, art. 6, sec. 5.] The liability of the property to the assessment, that is to say, whether it comes within the description of property which may be charged with the cost of the land involved in the proceeding, including damages to land not taken, is the foundation of the right of the commissioners of the court to assess it, and the final judgment of the court is, as it should be, only prima-facie evidence of that liability. Prima-facie evidence means evidence that may be rebutted, and the object of the plaintiff in this suit is to attempt to rebut it by proof that his land does not come within that class.

III. It is suggested that the view we have taken is at variance with the decision of this court in St. Louis v. Christian Brothers College, 257 Mo. 541. The only question before the court and decided in that case was whether or not an ordinance establishing a boulevard could, before any proceeding had been taken under it, be repealed without the written consent of persons owning two-thirds of the abutting land, and the point was decided in the affirmative. We are still satisfied with that result. We are now deciding that in opening a boulevard, by whatever name it may be designated, the assessment of benefits to pay for land taken, and the damages to land not taken, must conform to the requirements of the charter with respect to the lands subject to assessment for that purpose, and that the averments of the petition are sufficient, as against a general demurrer, to present the question in this case.

The judgment of the circuit court is reversed and the cause remanded for further proceedings. *Railey, C.,* concurs.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All the judges concur.