## DOHERTY *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—DETROIT CHARTER—PAVING A BOULEVARD NOT A LOCAL IMPROVEMENT.

    Under the charter of the city of Detroit (title 6, chap. 3, § 2), paving a boulevard is not a local improvement.

2. SAME—CHANGING NAME NOT DETERMINATIVE WHETHER HIGHWAY IS STREET OR BOULEVARD.

    Determination as to whether a certain highway is a street or a boulevard does not depend solely on the act of the city council in changing the name from one to the other, but other evidence should be taken into consideration, important among which is the highway itself, in its physical aspect.

3. SAME—EVIDENCE SUFFICIENT TO SHOW HIGHWAY IS BOULEVARD RATHER THAN STREET.

    Evidence that the city council changed the name of a highway from a street to a boulevard, that it was popularly known as a boulevard, that its signs were so named, that the assessors and the city plan and improvement commission treated it as a boulevard, that the department of parks and boulevards assumed jurisdiction over it, expended public money on it, and treated it like an adjoining boulevard, and that it answers the description of a boulevard, *held*, sufficient to justify a determination that it is a boulevard rather than a street.

4. SAME—COUNCIL MAY NOT CALL BOULEVARD A STREET FOR PURPOSE OF ASSESSING PROPERTY OWNERS.

    The common council of a city may not violate the charter and assess property for benefits for paving a boulevard by the simple device of calling it a street, nor may it do so by failing to make formal direction to the department of parks and boulevards to take jurisdiction of the boulevard.

5. SAME—JUDGMENT IN CONDEMNATION MAY NOT BE COLLATERALLY ATTACKED.

    Where the provisions of the charter of the city of Detroit (title 8, chap. 1, §§ 2, 15) were followed in condemning land for the purpose of opening and widening a boulevard and

assessing part of the cost thereof against property in the assessment district, and there was judgment in condemnation which has been satisfied, and the highway is an accomplished fact, the condemnation proceeding may not be collaterally attacked in a suit by property owners to vacate the special assessment.

Appeal from Wayne; Merriam (De Witt H.), J. Submitted October 16, 1928. (Docket No. 2, Calendar No. 33,742.) Decided December 4, 1928.

Bill by Thomas N. Doherty and others against the city of Detroit and another to set aside special assessments. From a decree for plaintiffs, defendants appeal. Modified and affirmed.

*Carl B. Grawn* and *Lightner, Oxtoby, Hanley & Crawford,* for plaintiffs.

*Walter Barlow* (*Clarence E. Wilcox,* of counsel), for defendants.

CLARK, J. The plaintiffs own lots on a boulevard, sometimes called Chicago boulevard, between Linwood avenue and Dexter boulevard, in Detroit. They seek, by this bill, to have vacated a special assessment for the widening and opening of the boulevard between Linwood and Dexter. They also pray that a special assessment for paving that portion of the boulevard be set aside. They had decree from which defendants have appealed.

We discuss first the assessment for paving. Under the city charter paving a boulevard is not a local improvement. Detroit Charter, tit. 6, chap. 3, § 2. Paving a street where abutting or adjacent real estate shall be benefited is a local improvement and it is the charter duty of the common council in such case to assess benefits ratably against the real estate to be benefited.

Is the highway between Linwood and Dexter a boulevard or a street? Chicago boulevard extended westward from Woodward avenue to Linwood. In August, 1917, a 60-foot street known as Weston avenue extended west from near the westerly end of Chicago boulevard at Linwood through and beyond a number of streets or boulevards including Dexter boulevard and Nardin avenue to McQuade street. On August 28, 1917, the common council, by ordinance, duly approved, provided:

"That the name of the street and highway known as Weston avenue between Linwood avenue and McQuade street, be and the same is hereby changed and shall hereafter be known and designated as Chicago boulevard."

On June 20, 1922, while such ordinance was still in effect, the common council adopted a resolution declaring it a necessary public improvement to open Thomas avenue from Linwood avenue to Nardin avenue where not already open as a public street which resolution—

"further declared it necessary to take private property for the purpose of making said improvement, which property was therein described; that said resolution designated a special assessment district against which part of the damages awarded in said proceeding were to be assessed, and directed the corporation counsel to institute the necessary proceedings therefor in the recorder's court of said city; and on July 29, 1922, said petition was filed in said court pursuant to said resolution and said proceeding to make said improvement begun. * * *

"On December 5, 1922, by resolution, said common council directed the corporation counsel to amend said petition in said proceedings so as to include only so much of the private property to be taken for said improvements as lay between the west

line of Linwood avenue and the east line of Dexter boulevard, and on January 3, 1923, an order was entered in said proceedings purporting to amend said proceedings accordingly.

"On January 18, 1923, a jury was empaneled in said cause, who viewed the premises and returned to court, and on January 26, 1923, said jury brought in a verdict finding the necessity of said widening and awarding damages for the taking of the property therein designated."     *     *     *

The verdict was confirmed and the awards paid in full.

It will be noted that in the condemnation proceedings Chicago boulevard is called by the misnomer, Thomas avenue. On June 5, 1923, an ordinance was approved changing the name of Chicago boulevard between Linwood avenue and Dexter boulevard to Thomas avenue.

On May 6, 1924, the common council confirmed a contract for the paving of so-called Thomas avenue between Linwood and Dexter. The pavement was completed and accepted by the city on August 5, 1924. The highway at the place in question is now approximately 175 feet wide. The plaintiffs' property abutting the highway so paved was thereafter assessed for benefits for paving.

In determining whether the highway is a street or a boulevard we do not rest decision on the act of the common council in changing the name of Weston avenue to Chicago boulevard; the change of name, that the highway at the place in question was popularly known as Chicago boulevard, that its signs were of that name, and that the city assessors and the city plan and improvement commission treated it as a boulevard are here treated as evidence respecting its character, as is also that the department of parks and boulevards assumed jurisdiction over

it, expended public money upon it, patrolled it against heavy loads, landscaped it and treated it like the adjoining part of Chicago boulevard. We treat all these matters as evidence because we need not in this opinion consider that they or any of them are capable of greater significance. 44 C. J. p. 882.

An important part of the evidence is the highway, the thing itself, in its physical aspect. It is wide, according to the record wider than Chicago boulevard east of Linwood, much wider than an ordinary street. It is given a parklike appearance. It contains for much of its length at least and at present islands so-called. It answers the description of a boulevard. *MacLachlan* v. *City of Detroit,* 208 Mich. 188; 1 Words and Phrases (2d Ser.), 484; *Miller* v. *City of Detroit, ante,* 38. It is a boulevard.

*Albers* v. *City of St. Louis,* 268 Mo. 349 (188 S. W. 83), is closely in point. There the city of St. Louis passed an ordinance changing a part of Bircher street into a boulevard to be known as "King's Highway Northeast" and to widen the boulevard, etc. After taking certain steps in carrying out the provisions of the ordinance, the city, seeking to create a special assessment district and to assess lands of the complainant (which it might do in case of improving a street and which it might not do in case of a boulevard), passed an ordinance repealing the former ordinance which had ordained Bircher street to be a boulevard, and passed another ordinance merely changing the name of the street. Then an assessment district was created and plaintiff's lands were included therein. He commenced suit to cancel the assessment, suffered adverse decree and appealed. The supreme court, in reversing the decree, said:

"The plaintiff insists that his property is not sub-

ject to taxation for the establishment and opening of King's Highway Northeast, because it is within the description of a boulevard, as used in the charter, and is consequently expressly excluded from the rule prescribed in case of those highways described in the same instrument as streets and avenues, in which the legislature has prescribed another and totally inconsistent rule."

And held:

"The charter provision rests upon the thing itself, and it cannot be disobeyed by the mere manipulation of the nomenclature in which its commands are expressed."

The decision is applicable here. The common council of the defendant city may not violate the charter and assess property for benefits for paving a boulevard by the simple device of calling it a street, nor can it do so by failing to make formal direction to the department of parks and boulevards to take jurisdiction of the boulevard. The portion of the decree setting aside as to plaintiffs the assessment roll for paving the boulevard is affirmed.

We next consider the special assessment growing out of the condemnation of lands for the purpose of opening and widening the boulevard between Linwood and Dexter. The city followed the charter provisions (title 8, chap. 1, §§ 2 and 15), and determined to assess a part of the cost of the property taken in condemnation against property in the assessment district, as it had a right to do. *Lowrie & Robinson Lumber Co.* v. *City of Detroit*, 237 Mich. 138. Our attention is not called to any provision of the charter nor to any rule which would deny such right to the city because the land was taken for a boulevard, a proposed public improvement. Plaintiffs' attack in this regard is directed against the

condemnation proceeding on the theory that it is invalid and furnishes no legal basis for the assessment of benefits.

The invalidity argued is misnomer of highway, and using the words "opening" or "opening and widening" instead of "widening," and permitting an amendment of the petition in court reducing the amount of property to be taken and making corresponding reduction in the area of the proposed assessment district.

There is here a judgment in condemnation which has been satisfied. The land has been taken. The public highway is an accomplished fact. Neither the city nor the respondents in the condemnation proceeding can question the judgment. Every objection here urged by plaintiffs is disposed of by *Scotten* v. *City of Detroit,* 106 Mich. 564, where a bill was filed to restrain collection of an assessment levied by the common council to pay for the opening of Toledo avenue. Plaintiff contended—

"that the proceedings for the opening of this street were fatally defective and without jurisdiction, and that, this being so, the assessment of complainant's property is without authority of law."

The language of the statute there involved is remarkably like the language of the city charter here pertinent. It was there held:

"If this (condemnation proceeding) is a judicial proceeding, can it be said that it is open to attack by any party in a collateral proceeding? We think not. We think, when the judgment was pronounced by the court, this bound the city, and compelled the authorities to make compensation to the owners of the land. The power to dismiss the proceedings voluntarily by the city terminated at the rendition of the verdict of the jury. Where the owner of the

property has the opportunity to have a hearing, we think the determination of the court that the proceeding is properly instituted is conclusive in all collateral proceedings. See Lewis, Em. Dom. § 605, and cases cited; Van Fleet, Coll. Attack, § 62; *Dyckman* v. *Mayor of New York,* 5 N. Y. 434; *Borgman* v. *City of Detroit,* 102 Mich. 261; *Lehmer* v. *People,* 80 Ill. 601.

"It is urged by counsel that, while the judgment may be good as against the respondents in that proceeding, it is not good as against the taxpayer. But this statute provides for two different proceedings, —one proceeding by which the street is to be opened, and in this proceeding in the court the city and the owner of the land sought to be taken are parties. The other proceeding is by the assessment of property benefited by the opening, for the benefits conferred. The first proceeding has been had. The highway is opened. This is accomplished in fact and in law. It is not open to the city to assert that its legal representative acted without authority, nor is it open to the respondents in that case to make that assertion. That was one of the questions litigated and determined by the court in that proceeding. How, then, shall the compensation for the opening of the street be made? This the statute also provides for, and it provides that proceedings shall be taken by the common council to determine the benefits, and to cause the same to be assessed, upon receipt of a certified copy of the verdict of the jury and of the judgment of confirmation. This proceeding is based upon the judgment, and, if it be binding in law upon the city, it furnishes a sufficient basis for the assessment of benefits derived from the opening. Counsel for complainant contend that it is incumbent upon the city to take precisely the steps marked out by the statute, before jurisdiction can exist to assess the tax. But we think the basis of the assessment is the judgment entered in the recorder's court under the authority of the statute."

The assessment for widening and opening the boulevard is sustained, and the decree modified accordingly, and, so modified, affirmed, with costs to appellants.

FEAD, C. J., and NORTH, FELLOWS, WIEST, MC-DONALD, POTTER, and SHARPE, JJ., concurred.