WEYERHAUESER *v.* MINNESOTA.

ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 128. Argued and submitted January 30, 1900. — Decided February 26, 1900.

The provision in the statute of Minnesota for 1893, c. 151, authorizing the Governor of the State when it is made to appear that there has been a gross undervaluation of taxable property by the assessors for any county in the State, to appoint a board to revalue and reassess it, which board shall, after due examination, prepare a list of all such undervalued property, of the year or years in which it was so underassessed, the amount of the assessment and the actual and true value thereof for which it should have been so assessed, does no violation to the Fourteenth Amendment to the Constitution of the United States, and does not deprive the owner of lands, so reassessed at an advanced value, of his lands without due process of law.

This writ of error brings up for review a judgment of the Supreme Court of Minnesota affirming the judgment of the district court of Itasca County, assessing certain taxes for the years 1888 to 1893, inclusive, on the lands of the plaintiff in error.

The law upon which the proceedings in taxation were based, statutes of Minnesota of 1893, c. 151, omitting parts not material to the pending controversy, is as follows:

"Whenever it shall be made to appear to the governor of this State by a complaint in writing and under oath, or by the finding of any court, the legislature or any committee thereof, that for any reason any considerable amount of property in any county in this State . . . is assessed . . . has been grossly undervalued by the assessor or other county officials, whether such valuation and assessment has or has not been reviewed or acted upon by the county board of equaliza-

tion of any such county, he shall forthwith appoint in writing some competent citizen of this State, not a resident of such county, to ascertain the character, location, value and ownership of the real and personal property in any such county so . . . underassessed or undervalued, who shall forthwith proceed to examine and report upon the subject, and prepare a list or lists thereof in duplicate, showing therein the character, location, ownership and valuation of all such property, with the year or years for which the same or any part thereof has been . . . undervalued; said list shall also show therein opposite each tract, piece or parcel of land or personal property . . . underassessed for any year or years thereupon, in which the same was undervalued or underassessed, with the amount of such assessment, the actual and true value thereof at the time and for which the same was subject to and should have been assessed, together with the difference between the assessed and actual value thereof as so found. One of which duplicate reports or lists shall be by him filed with the county auditor of such county on or before the first day of January in the year in which any such assessment is to be made, and the other of said lists shall be by him filed within the same time with the state auditor."

It is provided in other sections of the law that the county auditor shall enter the lists on the assessment books, and that the assessor shall assess the property at its true value corresponding with the lists, and the auditor shall proceed as under the general law.

The taxes which are in controversy were assessed under this law, and proceedings were instituted for their recovery in accordance with the usual practice in collecting taxes against lands in Minnesota.

The plaintiffs in error claimed in their answer that the law of the State and the proceedings under it were repugnant to the Constitution of the United States, in that they impaired the obligation of the contracts made by plaintiffs in error with their grantors, deprived them of their property without due process of law, and denied them the equal protection of the laws.

The facts were stipulated as follows:

"It is hereby stipulated between the parties to the above-entitled action that the following are, and may be considered by the court, as facts in said matter:

"That the defendants above named are the owners of the lands described in their answer in this proceeding ; that the defendants became the owners of such lands on September 18, 1893 ; that in each of the years 1888, 1889, 1890, 1891, 1892, 1893 and 1894, taxes were assessed upon all said lands by the proper officials pursuant to the provisions of chapter XI, General Statutes of 1878, and the amendments thereto, and that such taxes for each of said years were, before the same became delinquent, paid by the defendants and their predecessors in estate ; that the taxes sought to be recovered against said lands in this proceeding are claimed to be due by reason of an assessment made pursuant to the provisions of chapter 151, General Laws 1893, upon the ground that said lands in said prior assessment proceedings had been grossly undervalued.

"That prior to January 1, A.D. 1894, it was made to appear to the Governor of this State, by duly verified complaint, that a considerable amount of property in said county of Itasca had been grossly undervalued in the tax proceedings for the years from 1888 to 1893, inclusive ; that thereupon and forthwith the said Governor did, in writing, appoint a competent citizen of this State, not a resident of said county, to ascertain the character, location, value and ownership of the real and personal property in said county so omitted, underassessed or undervalued, to wit, one J. S. Dedon ; that thereupon the said Dedon did forthwith proceed to examine and report upon the subject, and did prepare a duplicate list of such lands as he determined had been so underassessed or undervalued, in the manner and form as prescribed in section one of said chapter 151, General Laws 1893 ; that thereafter, and prior to January 1, A.D. 1894, the said duplicate lists were filed with the state auditor and with the county auditor of said Itasca County ; that thereafter the county auditor and county assessor of said Itasca County took the proceedings in regard to said lands described in said lists, which are prescribed in section two of said chapter 151.

" That the said lands so owned by these defendants were returned as undervalued lands for each of said years from 1888 to 1893, inclusive, and were entered by the county auditor upon the real estate assessment books for the year 1894, and were assessed by the assessor of said Itasca County at the respective values shown by said lists, and were also entered by the county auditor upon the assessment and tax books for each of said years from 1888 to 1893, inclusive, and were assessed by him at the valuation and amounts as shown by said lists to have been omitted or undervalued, and arrearages of taxes by reason of said increased valuation were extended upon said assessment books, and the taxes claimed in this proceeding are the proper amount of taxes claimed in this proceeding, which would be due against said lands on account of said increased valuation if such tax were legal and valid and could be collected in this proceeding.

" That no notice of any of said proceedings by any of said persons in making said reassessment or revaluation of said lands, or in extending said taxes against said lands, was ever given, by publication or otherwise, to these defendants."

The trial court found in accordance with the stipulation, and further found as a conclusion of law that the proceedings for levying and assessing the taxes were in accordance with the provisions of chapter 151, General Laws of 1893, but that the said law and the proceedings therein provided were unconstitutional, and the taxes, therefore, not a legal charge against the lands.

The judgment was reversed by the Supreme Court and the taxes sustained. 68 Minnesota, 353.

The court in its opinion confined its consideration to the validity of the law under the constitution of the State, and did not pass upon the claim that it was also in violation of the Constitution of the United States. After the judgment was entered in compliance with its mandate by the district court the case was again certified to the Supreme Court in accordance with the practice of the State.

The certificate recited the facts which have already been set out, and " that the points raised by the defendants [plain-

tiffs in error] herein are as follows, to wit : 1. Is chapter 151, General Laws of 1893, of the State of Minnesota, and the assessment of taxes attempted to be made thereunder in this proceeding, constitutional and legal ?  2. In particular, is said chapter 151 and the assessment of taxes attempted to be made in pursuance thereof in this proceeding, in violation of article fourteen of the amendments to the Constitution of the United States, providing that no State shall deprive any person of his property without due process of law, or deny to any person within its jurisdiction equal protection of the laws ? ”

The Supreme Court affirmed the judgment. 72 Minnesota, 519.

*Mr. George Welwood Murray* for plaintiffs in error. *Mr. Moses E. Clapp* and *Mr. John B. Atwater* were with him on the brief.

*Mr. W. B. Douglas* and *Mr. C. W. Somerby*, for defendant in error, submitted on their brief.

Mr. Justice McKenna, after stating the case as above, delivered the opinion of the court.

The procedure under the statute is as follows :  A complaint to the Governor of the State that a considerable amount of property has been grossly undervalued by the assessor or other county officials.

The appointment by the Governor of a competent person to examine and report, and if he find undervalued property to prepare a list in duplicate showing its character, location, ownership and valuation, one of which lists shall be filed with the county auditor.

The entry of the list on the assessment books by the auditor.

The assessment of the property at its value corresponding to the list.

Proceedings by the county auditor as under the general law.

This procedure was exactly followed, and it is stipulated that "the taxes claimed in this proceeding are the proper amount of taxes due against said lands on account of said increased valuation. . . ." In other words, the lands have not been made to bear a greater burden than they would and should have borne if they had been originally assessed at their true valuation. It is, however, claimed that the increased taxation is illegal because the law authorizing it offends the Fourteenth Amendment of the Constitution of the United States.

The grounds of the contention are that the former assessments constituted judicial judgments, and hence to commit to the executive the power of setting them aside or to set them aside without notice or opportunity to be heard is not due process of law. And further, that the statute deprives the plaintiffs in error of the equal protection of the laws, in that it gives to owners of similar real estate an opportunity to contest the absolute assessed valuation of their property and to plaintiffs in error only the opportunity to contest the gross overvaluation ; and that if the State knew of fraud in the assessments it is estopped to assert it against an innocent party, which plaintiffs in error are claimed to be, and as the statute ignores this doctrine of estoppel, it does not provide due process.

Conceding, *arguendo*, that the former assessments were judicial judgments, the argument based on their immunity from executive power or attack is not supported by the statute. It does not commit to the Governor control over them, and it does give opportunity to be heard. The Governor only starts the inquiry upon which the reassessment may be based, and the statute directs the proceedings in an orderly course of inquiry, report, entry upon the assessment books, assessment by the assessor and an action for the collection of the taxes levied in the regular judicial tribunals.

The complaint of plaintiffs in error seems to be that a hearing before the Governor was not provided. If the basis of this is that the owner of property must have notice of every step in taxation proceedings, we agree with the Supreme Court of the State that it is untenable. *Pittsburg &c. Railway* v. *Board*

*of Public Works*, 172 U. S. 32; *Davidson* v. *New Orleans*, 96 U. S. 97; *Hagar* v. *Reclamation District*, 111 U. S. 701; *Winona & St. Peter Land Co.* v. *Minnesota*, 159 U. S. 526. If the basis of the complaint is that the Governor acts judicially and plaintiffs in error were entitled to have notice, and be heard before he rendered judgment, it is also untenable. The Governor does not act judicially — he determines nothing but that a complaint has been made in writing and under oath, or that it has been found by a court, or the legislature or any committee thereof, that a considerable amount of property in a county of the State has been grossly undervalued. If the perception of the fact of a complaint or a finding of a court or legislature is a judgment in the sense urged, every act of government is a judgment, and all of its exercises could be stopped, upon the reasoning of plaintiffs in error, by perpetual hearings. But supposing the Governor's act is a judgment, it ends with the appointment of an examiner. What is substantial comes afterwards, and if against what may be detrimental in that the landowner can be heard, he is afforded due process within the rule announced by the authorities, *supra*.

That the landowner is provided with an opportunity to be heard is decided by the Supreme Court of the State. In the opinion in the case at bar the court said, quoting from *Redwood* v. *Winona & St. Peter Land Co.*, 40 Minnesota, 512, 518 :·

"Within 20 days after the last publication of the delinquent list any person may by answer interpose any defence or objection he may have to the tax. He may set up as a defence that the tax is void for want of authority to levy it, or that it was partially, unfairly or unequally assessed. *Comm'rs of St. Louis Co.* v. *Nettleton*, 22 Minnesota, 356. He may set up as a defence *pro tanto* that a part of a tax has not been remitted, as required by some statute. *Comm'rs of Houston Co.* v. *Jessup*, Id. 552. That the land is exempt, or that the tax has been paid. *County of Chicago* v. *St. Paul & Duluth R. Co.*, 27 Minnesota, 109. That there was no authority to levy the tax, or that the special facts authorizing the insertion of taxes for past years in the list did not exist or any omissions in the proceedings prior to filing the list, resulting to his

prejudice. *County of Olmsted* v. *Barber*, 31 Minnesota, 256. The filing of the list is the institution of an action against each tract of land described in it for the recovery of the taxes appearing in the list against such tract and tenders an issue on every fact necessary to the validity of such taxes. *Chauncey* v. *Wass*, 35 Minnesota, 1. The only limitation or restriction upon the defences or objections which may be interposed is that contained in section 79, to the effect that if a party interposes as a defence an omission of any of the things provided by law in relation to the assessment or levy of a tax or of anything required by an officer to be done prior to filing the list with the clerk, the burden is on him to show that such omission has resulted in prejudice to him, and that the taxes have been partially, unfairly, or unequally assessed. This relates not to want of authority to levy the tax, but to some omission to do or irregularity in doing the things required to be done in assessing or levying a tax otherwise valid. *Comm'rs of St. Louis Co.* v. *Nettleton, supra.* And certainly, in justice or reason, a party cannot complain that when he objects to a tax on the ground of some omission or irregularity in matters of form, he is required to show that he was prejudiced."

This court in *Winona & St. Peter Land Co.* v. *Minnesota*, 159 U. S. 526, quoted the above extract as establishing that the property owner was afforded a hearing by the laws of the State, and declared the rule that the Constitution of the United States was satisfied if an opportunity be given to question the validity or amount of the tax " either before that amount is determined or in subsequent proceedings for its collection." And referring to the difference in the manner of assessment and the successive opportunities for review which were given to the property owner in one case and not in the other, said: But there is nothing in the difference to affect the constitutional rights of a party. The legislature may authorize different modes of assessment for different properties, providing the rule of assessment is the same. *Kentucky Railroad Tax cases*, 115 U. S. 321, 337; *Pittsburgh, Cincinnati &c. Railway* v. *Backus*, 154 U. S. 421. The latter cases of *State* v. *Lakeside Land Co.*, 71 Minnesota, 283, and *State* v. *West*

*Duluth Land Co.*, 78 N. W. Rep. 115, cited by the plaintiffs in error, do not militate against the rule in any way substantial to the pending controversy.

The special objections of plaintiffs in error therefore cannot be sustained, nor the broader one that the first assessments are final against any power of review or addition by the legislature. We held in the *Winona Case, supra*, that the legislature had power to provide for the assessment of property which had escaped taxation in prior years and, as we have seen, a special manner of assessment was sustained. We agree with the Supreme Court of the State that a gross undervaluation of property is within the principle applicable to an entire omission of property. If it were otherwise the power and duty of the legislature to impose taxes and to equalize their burdens would be defeated by the fraud of public officers, perhaps induced by the very property owners who afterwards claim its illegal advantage.

If an officer omits to assess property or grossly undervalues it he violates his duty, and the property and its owners escape their just share of the public burdens. In *Stanley* v. *Supervisors of Albany*, 121 U. S. 535, we held that against an excessive valuation of property its owner had a remedy in equity to prevent the collection of the illegal excess. It would be very strange if the State, against a gross undervaluation of property, could not in the exercise of its sovereignty give itself a remedy for the illegal deficiency. And this is the effect of the statute. It "merely sets in motion new proceedings to collect the balance of the State's claim, and there is no constitutional objection in the way of doing this," as the Supreme Court of the State said in its opinion.

The other objections to the statute do not demand an extended consideration. That it deprives plaintiffs in error of the equal protection of the laws is based on the absence of a provision for notice in the progress of the proceedings, and is answered by the *Winona case, supra*.

The fourth contention, that the State is estopped to assert fraud in the former assessment, if we should concede that it has any basis in law, lacks an essential basis of fact.

The plaintiffs in error purchased after the enactment of the statute, and the record affords no presumptions of ignorance or innocence. If plaintiffs had been attentive to the assessment of the land its gross undervaluation could not have escaped their notice. Besides, whether a party in a case has been given or refused the benefit of the law of estoppel involves no Federal question.

*Judgment affirmed.*