ROBERTSON, STATE REVENUE AGENT *v.* BANK OF YAZOO CITY.

SAME *v.* CITIZENS' BANK & TRUST CO.

SAME *v.* DELTA BANK & TRUST CO.

[85 South. 175, In Banc. Nos. 21282-21284.]

1. TAXATION. *Assessment of bank made on unsworn statement of its property is not invalid.*

An assessment of the property of a bank for taxation, made in accordance with an unsworn statement of its property filed with the assessor, is not void because the statement was not sworn to as required by section 4273, Code of 1906 (section 6907, Hemingway's Code).

2. TAXATION.  *Assessment of property intentionally undervalued by owner is not invalid.*

   An assessment of property for taxation is not invalidated because the property was intentionally undervalued by the owner when listing it with the assessor.

3. TAXATION.  *Property can be back-assessed only because of having "escaped taxation."*

   Property can be back-assessed under section 4740, Code of 1906 (section 7058, Hemingway's Code), authorizing the back-assessment of property that "has escaped taxation by reason of not being assessed," only when it has not been assessed in fact, and cannot be when there has been a former, though void, assessment.

   ETHRIDGE, HOLDEN, and SGEVENS, JJ., dissenting.

APPEAL from circuit court of Yazoo county.

HON. W. H. POTTER, Judge.

Proceedings by Stokes V. Robertson, State Revenue Agent, to back-assess the Bank of Yazoo City, the Citizens' Bank & Trust Company, and the Delta Bank & Trust Company, with protest by the banks filed with the board of supervisors. Back-assessment disapproved by the board of supervisors and causes appealed to the circuit court, wherein demurrers to the so-called replications of the State Revenue Agent were sustained and final judgment rendered against him, and he appeals in each cause. Affirmed by an equally divided court.

*R. H. & J. H. Thompson* and *Fultan Thompson,* for appellant.

The question presented in each of these cases is one of great importance to the state and to the several counties in Mississippi, one vital to their finances, one which will determine the power or the want of power in the courts of the state to bring to book, defaulting taxpayers who have wilfully and purposely defrauded the state of its revenue. It may be stated thus:

Can a taxpayer, with intent to defraud the state and county of taxes justly due from him, fraudulently and

criminally deceive the board of supervisors of his county and induce it, by his deceitful, fraudulent and criminal pretenses and representations, to approve of a shameful undervaluation of his property listed for taxation, and escape liability for what he justly owes for taxes by pleading the board's approval of his fraudulent assessment so obtained in bar of all demands afterwards made on him for the taxes, the payment of which he has wrongfully escaped by his aforesaid evil practices?

The court's attention is called to Mississippi Code 1906, pp. 1046, 1047 and 1048, each of which, especially sections 1047 and 1048, the banks have violated on six separate occasions, once in each of said years.

We commend to the court the following extract from one of its previous opinions delivered in the case of *Gulf, etc., Railroad Co.* v. *Adams, State Revenue Agent,* 85 Miss. 772. In that case this court, after defining the presumptions attending the findings of assessing boards, used language especially applicable to the cases at bar. This court at p. 800 of the report said: "But, of course, this doctrine is not to be extended to assessments procured to be made by fraud nor to assessments made in conscious and deliberate defiance of law as to all such, whether the property withheld from or escaping assessment be franchise or other property, we adhere to and reaffirm the wholesale doctrine announced in *Revenue Agent* v. *Clarke,* 80 Miss. 134, 31 So. 216."

The replication in each of these cases distinctly avers that the bank failed to comply with the code section and while the crime denounced in the staute may be the crime of the officers of the bank, rather than the crime of the bank itself, the banks cannot take advantage of nor escape results arising from crimes committed by their officers any more than they can be benefited by or escape results of crimes committed by themselves. But the banks have pleaded guilty in these cases to their own violations of section 1047 of the code. That section makes it a crime for any taxpayer to wilfully undervalue his property listed

for taxation. The replication in each case distinctly avers that the bank, wilfully and knowingly undervalued its property and did so with the intent and purpose, fraudulently, to escape taxation justly due from it to the state and county and the averment is admitted to be true. The facts fully justify the designation of the conduct of the banks as having been criminal as well as fraudulent.

If there be a principle of law to which there should be no exception, that principle is that fraud vitiates everything; a fraudulently obtained judgment is itself utterly void and should not be made the predicate of a plea of *res adjudicata* in a proceeding like the ones at bar.

If the state and county had proceeded in equity to have the judgment pleaded by the banks vacated as having been fraudulently obtained and the facts pleaded in the replication had been established their right to a decree could not reasonably have been questioned, save, perhaps on the ground that the chancery court was not the proper tribunal in which to bring the suit. See *Adams* v. *First National Bank of Greenwood,* 103 Miss. 744; S. C. 60 So. 770, and several other cases holding the chancery court not to be a tribunal for collecting taxes. Under equitable principles the judgment of the board of supervisors pleaded, is certainly void, the facts averred in the replications being true. They are void at law as well as in equity, aside from mere matters of procedure sometimes held to govern common-law courts. The proceedings followed in these cases by the revenue agent are statutory and are not governed by the cast-iron rules sometimes controlling in common-law courts.

The board of supervisors is not confined in the exercise of its jurisdiction to common-law matters, nor is it restricted by common-law rules of procedure. This being true, the circuit court, on appeal from the board of supervisors, the trial being *de novo,* is no more confined in its jurisdiction to common-law matters than the board itself was so confined, nor is it any more restricted by common-law rules of procedure than the board of supervisors is so restricted. The board of supervisors in the exercise

of its powers may consider and enforce equitable principles when applicable to questions and controversies before it just as freely and fully as it may consider and enforce common-law principles, and the circuit court on appeals from the board of supervisors has all the power in a *de novo* trial as the board of supervisors had· in fact upon such appeals the circuit court acts as if it were the board of supervisors.

It is idle, therefore, for the banks in these cases to invoke authorities to the effect that a judgment cannot be assailed for fraud in a collateral proceeding; and this for two reasons: first, these cases do not collaterally but directly assail the judgments of the board of supervisors (pleaded; and second, the board of supervisors, in determining whether the judgments are fraudulent and void can properly and legally apply to the question equitable as well as legal principles.

It is perhaps useless for us to have made the foregoing contentions based on the fact that the board of supervisors may apply equitable as well as legal principles to all matters presented to it for decision and that the circuit court, upon appeals from the board has the same power, because this court in *Adams, State Revenue Agent,* v. *Clarke,* 80 Miss. 134, has practically decided the cases now before the court in appellant's favor.

It is true that some of the expressions in the opinion of the court in *Adams* v. *Clarke,* seemingly except from the conclusion therein, reached a case where all of ·the taxpayers' property was seemingly assessed, but undervalued. The exceptions, we say it with due respect, are illogical, if fraud vitiates an assessment and the formal judgment approving it.

We conclude our references to *Adams* v. *Clarke,* by quoting a few sentences from the opinion of the court in that case commending them to the court, they are: "Courts do not sit to enable lawbreakers to profit by their own wrongdoing. The proposition that the assessment in this case, made in intentional and wilful disregard of all the

sanctions required by law to make it an assessment, is *res adjudicata,* is abhorent to justice, and would put a premium on fraud." How applicable these sentences are to the cases at bar! This court did not allow Clarke to escape on his undervalued "solvent credits, nor can we see how this court can allow the banks to escape on their undervalued capital stock, in view of the admitted facts, pleaded in the replication in each of these cases.   We are told by this court in *Adams* v. *Lamb-Fish Lumber Company,* 104 Miss. 48, S. C. 60 So. 645, that valuation is a most important element in an assessment.   How can an important element of an assessment be fraudulent without the assessment itself being fraudulent.

There is another case decided by this court having pertinency to the question now before it.   That case is *Adams, State Revenue Agent,* v. *Kuykendall,* 83 Miss. 571.

The decision of this court in the case of *Adams, State Revenue Agent,* v. *Luce,* 87 Miss. 221, S. C. 39 So. 418, must be construed as limited to the facts of that case, and when so construed it has no application to the cases at bar.   *Adams, State Revenue Agent,* v. *People's Bank of Biloxi,* 108 Miss. 346, S. C. 66 So. 407, is worthy of note. There, as in the cases at bar, there was a failure to comply with the statute, Mississippi Code 1906, p. 4273, requiring the officers of banks to deliver to the assessor a statement under oath showing the number and amount of its shares of stock, etc., estimating the stock at par unless increased or diminished as therein specified.   The people's bank of Biloxi rendered its property under the heading "personal property not otherwise described," making no showing of or reference otherwise to its capital stock.   Its irregular, informal and unauthorized assessment was formally approved by the board of supervisors.   This court held that such an assessment was not *res adjudicata* when pleaded to an assessment of the bank's capital stock afterwards made by direction of the state revenue agent.   It will be noted, too, that in that case there was no averment or proof of fraud in the rendition of the irregular

and informal assessment pleaded in bar to the proceeding instituted by the revenue agent.    There was, however, proof that the shares of stock of the Biloxi bank were of greater value than its par or face value but none to show it was fraudulently undervalued.   In each of the cases at bar the undervaluation is admitted to have been fraudulent, and purposely and intentionally made to defraud the state and county.  *Darnell* v. *Johnson, State Revenue Agent,* 109 Miss. 570.

In the cases at bar the banks in each of the years involved intentionally, wilfully, fraudulently and criminally in order to escape taxes, justly due from them, ignored and refused to perform their statutory duty in and about rendering their property for taxation, and *Darnell* v. *Johnson, State Revenue Agent,* we submit, is direct authority for the appellant in these cases.   Darnell's assessment was not an intentionally fraudulent one, and yet it and its formal approval were held not to be *res adjudicata,* simply and only, as we read the decision, because he failed to render his land to the assessor for taxation as the law required him to do.   If Darnell's assessment can be said to have been fraudulent, it was fraudulent in law only because he did not render it as the law required him to do.

The several decisions of this court denying the state revenue agent the right to proceed in the chancery court to enforce the collection of back taxes are correct, because the statutory procedure prescribed for their collection, gives him every right he could assert and affords him every remedy he could obtain in the chancery court, the board of supervisors being authorized to apply equitable principles to the solution of every question or matter coming before it for decision, and the circuit court upon appeal from the board of supervisors in the case appealed has all the authority which the board of supervisors possessed over it.   On such appeals the circuit court is not limited by its common-law functions, or by its common-law jurisdiction.   It exercises in such cases a statutory jurisdiction coextensive with the jurisdiction of the board of supervisors.   There-

.fore, we again insist, and we submit to the court that a fraudulent assessment, no matter if it be fraudulent alone because of undervaluation, can be vacated by the board of supervisors in statutory proceedings by the revenue agent such as were instituted in these cases. Where the agent permitted to sue for its annullment in equity the chancery court would adjudge the assailed assessment to be fraudulent and void, and the circuit court on appeal from the board of supervisors in the exercise of its statutory jurisdiction can give all relief that the board of supervisors could have granted.

These considerations, we think demonstrate the correctness of several decisions of this court which without them, although reaching just results, seem to be ill supported both in law and logic. We pray a reversal of the judgment from which the state revenue agent has appealed.

*Barnett & Perrin* and *Barbour & Henry,* for appellees.

The state revenue agent is attempting to enlarge his statutory power, permitting him to have back-assessed property that has escaped taxation, as to include undervaluations as well as escapes. To do so, the statute creating his office must be strained beyond recognition. He does this by the use of the term fraudulent undervaluations urging that where there has been an undervaluation, which, in his opinion, is fraudulent, there has been no legal assessment at all, and that he can proceed as if there had never been any assessment, a mere statement of his position would seem to detroy its force. He has to admit that he is proceeding for an undervaluation and when he does so, he is confronted with the law creating his office, that his power extends to escapes only, not undervaluations. The law does not provide for any proceeding by the revenue agent for an undervaluation. His statutory power existing only because of the statute, must be strictly construed, and so construed his efforts must be confined to escape *ex proprio vigore.* *State* v. *Simmons* 70 Miss. 501; *Darnell* v. *State, Rev. Agent.* 109 Miss. 577.

It is clear to us that in legal effect the back-assessments from which the revenue agent took his first appeal, and the second set of back-assessments, were not, in law assessments for an escape but for undervaluation, if for anything.

In *Darnell* v. *Revenue Agent,* 109 Miss. 570, where one of the factors constituting the property assessed had escaped, towit, the timber, this court held that a back assessment of it alone was proper. In this case, also, it was claimed that certain timber on other land had been grossly (necessarily, fraudulently) undervalued in its assessment. The court as to this, held there was no escape and the order of the board of supervisors approving the assessment was conclusive. *Simmons* v. *State,* 70 Miss. 487; *Adams* v. *Luce,* 87 Miss. 220; *Adams* v. *First Nat'l Bank of Greenwood,* 103 Miss. 744.

The powers to determine these orders of approval void is not given the revenue agent, nor is the power to declare them void given the board of supervisors.

In creating the office of state revenue agent, the legislature never intended to confer this power on him or at his instance, on the board of supervisors. It was not the purpose of the law creating the revenue agent to authorize him either to correct or have corrected what had already been done, through back-assessment. The power conferred was to have done what had by omission escaped being done.

Under section 4320 of the Code of 1906, the tax collector is given the power, after an assessment has been made, to assess such other persons and personal property as he may find unassessed by the assessor. Under section 4740 of the Code of 1906, the revenue agent is given the power to have assessed property, which has escaped taxation by not being assessed. The power of the revenue agent is no greater than that of the tax collector. Is it conceivable that the tax collector under section 4320 for any reason, can correct what the assessor has done. If assessments may be declared void for fraud, this certainly cannot be

done by way of back-assessment by the revenue agent, or by the tax collector.

See, also, *State* v. *Tonella,* 70 Miss. 713, 714, which induced the present law for back-assessments. The law criticized in that case authorized back-assessments for both escape and undervaluation, and so strong were the reasons given against a back-assessment for undervaluation that the present law omitted, and, by omission denied to the revenue agent the power to back assess for undervaluation. *State* v. *Wheatley,* 113 Miss. —; *State* v. *Tonella,* 70 Miss. 701, 14 So. 17, 22 L. R. A. 346.

In the case of *Adams* v. *People's Bank of Biloxi,* 108 Miss. 346, among other assessments, there was involved the assessment of the First National Bank of Gulfport, for the years 1904 and 1905. These assessments were on page 348, in 1904 and 1905, capital stock and undivided profits. The court comments on the fact that there is a special plan for the assessment of banks, and calls attention that an oath by an officer of the bank is required. At page 350, of the opinion it is said: "All the statements returned by the bank officers omitted to state the number and amount of shares of the capital stock paid in; they state the amount of capital stock paid in and of the surplus and undivided profits, and from this they deduct certain sums."

Here was a clear departure from the method of returning assessments, greater than in the instant cases, the appellees gave correctly the number of shares of stock and each was assessed. Page 351 of the opinion shows that: H. A. Jackson, cashier of the First National Bank, testified that the capital stock of that bank was not worth less than par during any of the years of the back-assessments and that the surplus had increased.

The opinion further says: The evidence shows that during the whole period covered, the capital stock and surplus of the banks were worth dollar for dollar. The statements returned by the bank officers were for a much less amount than the value of the banks stock and accumulations. The amounts on the assessment roll were those

given as balances after deductions in the statements. The shares of the bank appear therefrom to have been at less value than par, when it is shown by testimony that they were of equal or greater value.

The court then, after declaring bad some of the assessments involved, says: "The assessments against the First National Bank for the years 1904 and 1905, were properly made and on the roll, showed that the bank was to pay taxes on property it owned, and with which it was assessed under the scheme for taxing banks provided in the statute, that is on its capital stock and accumulations."

These assessments were accordingly held *res adjudicata* and conclusive against the revenue agent to again assess any part of the capital stock and surplus for those years. What then is the difference in those assessments and the ones at bar?

The case of *Revenue Agent* v. *Clark*, 80 Miss. 134, really presented to this court but one question for decision, and that whether or not the solvent credits sought to be back-assessed had escaped taxation, this court holding that they had. The case of the *Bank of Oxford*, 79 Miss. 152, while differentiated, was approved.

If, however, the revenue agent had the power to treat any assessment as a nullity, because of fraud, where is the fraud in making a return in which the property to be assessed was undervalued. Yet, this is what was done in the cases of *Darnell* v. *State*, 109 Miss. 570, and *Revenue Agent* v. *Bank*, 108 Miss. 346, in both of which the assessments being regular in all other respects, were held to be proper.

To show that the distinction between the assessment here involved and the kind involved in the Clark case, is good, we call attention to the fact that the judge who delivered the opinion in the *Bank of Biloxi case, supra,* did not overlook the Clark case. That case was carefully considered and quotations from the opinion reproduced. Still, the assessments exactly similar to the ones here, were, notwithstanding consideration of the Clark case, held to be conclusive against the same effort that is made here, to back-

assess for an undervaluation and failure to comply with the requirements of statutes as to form and oath.

*Morris* v. *Jones,* 37 N. E. 938, was a case where the taxpayer claimed that his return had been wrongfully changed by the assessor, and the court simply held that the assessor did right. The fact that the return was not sworn to was not considered by the court in reaching its decision. In Illinois, the return of the taxpayer was made conclusive on the assessor. (108 Ill. 11.)

Under the law of this state, when the assessments attacked were made, both the assessor and the board of supervisors were given ample power to ascertain the true value of the property. They were not required to accept as true either a sworn or unsworn return. Inquisitorial powers were given them. So great was their authority, it was not deemed necessary, until the creation of the tax commission, to confer further, and other powers on any others persons or bodies, or on the revenue agent.

We think this court is committed to the view that where property has been assessed, the approval of the assessment rolls by the board of supervisors, as to the property assessed is a judgment equally binding on the taxing power and on the taxpayer, and that if its effect as a judgment can be destroyed, it must be on the same, and no other, grounds that a judgment between individuals could be attacked, and that the same degree of proof and of diligence must exist in either case.

If, when it is concluded and becomes final, the taxpayer having taken no appeal, as provided by law, he is without remedy, no matter how grossly his property may be overvalued; even so the state is in the same manner, and to the same extent, bound by the assessment, if the property assessed was grossly undervalued. We note that paragraph of the case of *Gulf etc., R. R. Co.* v. *Adams,* 85 Miss. 772, so highly recommended by appellant, used this very significant language, as to all such, whether the property withheld from or escaping assessment be franchise or other property.

SMITH, C. J., delivered the opinion of the court.

This is a proceeding begun by the revenue agent to back-assess the appellee banks on the shares of their capital stock, surplus, and undivided profits for the years 1910 to 1915, inclusive, under the provisions of section 4740, Code of 1906 (section 7058, Hemingway's Code). The additional assessment directed by the revenue agent to be made sets forth the number of the shares of stock of each of the banks, his (the revenue agent's) valuation thereof, and the amounts of their surplus and undivided profits for each of the years. The appellees each filed protests with the board of supervisors against this assessment, setting forth, among other things, that the shares of their capital stock and their surplus and undivided profits were assessed against them for each of the years included in the present back-assessment and the taxes due thereon were paid, and it appears from these protests that the assessments then made and those now sought to be made are identical, except the valuation of the shares of the appellees' capital stock and their surplus and undivided profits was less in the original assessment than in the one here sought to be made. This back-assessment was disapproved by the board of supervisors, and its order in so doing was affirmed by the court below. When the cause reached the court below the appellant, apparently proceeding on the theory that it was an ordinary common-law action governed by the rules of pleading in such cases, filed what is styled in the record a "replication" to the appellees' protest, setting forth that the original assessments of the property here in question were fraudulent and of no validity whatever; the replication filed in the case of the Bank of Yazoo City, of which the others are substantial copies *mutatis mutandis,* being as follows:

"For replication to the objection of the Bank of Yazoo City, the state revenue agent says: The original assessment mentioned, set up as *res adjudicata* and in bar of the assessment sought to be validated and approved in this

case, was a fraudulent one and of no validity whatever, because the bank of Yazoo City did not deliver to the assessor for any one of the years involved in this suit a sworn statement as required by law (Code 1906, Section 4273), but the said taxpayer rendered, as private persons usually render assessments, the assessment pleaded by it to the tax assessor of Yazoo county, the same not being under oath; knowing that the value placed by it on its shares of capital stock was not its par value nor its true and actual value, and knowing that the true and actual cash vlue and the par value of its said stock at the time said assessment was rendered was not less than its par value, $100 per share, and that the par value of its said share of stock at said time aggregated a sum not less than $400,000, it nevertheless rendered the same to the assessor at the aggregate value of $300,000, a much less sum than the par value of said shares and much less than its true and actual value at said time; and this the said Bank of Yazoo City did knowingly, willfully, and fraudulently, with the intent, purpose, and design to cheat and defraud the state of Mississippi and the county of Yazoo of their revenue and to enable the said bank to escape the payment of taxes justly due from it to the state and county aforesaid.

"This the state revenue agent is ready to verify."

These replications were demurred to by the appellees, their demurrers were sustained, and the revenue agent declining to plead further, judgment final was rendered against him.

Judges SYKES, COOK and SMITH are of the opinion that the judgment of the court below should be affirmed, but Judges ETHRIDGE, HOLDEN and STEVENS are of the opinion that it should be reversed. We are therefore unable to reverse the judgment of the court below; consequently it must be affirmed.

Proceeding now to set forth the reasons for the opinion of Judges SYKES, COOK and SMITH, section 4740, Code of 1906 (section 7058, Hemingway's Code), under which this proceeding was begun, and which is the measure of the

appellant's power to cause property to be back-assessed for taxation, provides that— "Should the revenue agent discover that any . . . property . . . has escaped taxation by reason of not being assessed, it shall be his duty" to cause the tax collector to assess it, etc.

The question here presented, therefore, is, Has the property which the appellant seeks to have back-assessed escaped taxation by reason of not being assessed? The admission of the appellant that the property has been assessed would seem to answer the question, if it were not for his contention that although it has been in fact assessed the assessment is void in the eyes of the law; consequently the property has escaped taxation within the meaning of the statute. The grounds on which the contention that the original assessment of this property is void rests are, first, that the statement of the appellees' property filed with the assessor was not sworn to by its officers as required by section 4273, Code of 1906 (section 6907, Hemingway's Code) ; and, second, that the property listed in this unsworn statement was knowingly, willfully, and fraudulently undervalued, with the intent, purpose, and design to cheat and defraud the state.

The fact that the statement of the appellees' property filed with the assessor on which the original assessment was made was not sworn to cannot be held to invalidate the assessment, for the filing of such a statement is not at all necessary to the making of an assessment. The assessor has the power and it is his duty to assess property, although not listed with him at all by its owner. Sections 4265 and 4281, Code of 1906 (sections 6899 and 6915, Hemingway's Code).

Nor does the intentional undervaluation of his property by the taxpayer when listing it with the assessor invalidate the assessment thereof. Neither the assessor nor the board of supervisors in passing on the assessment roll is bound by the taxpayer's valuation of his property. If in the opinion of the assessor the property has been undervalued, it is his duty to report that fact to the board of supervisors when

he files the assessment roll with the board for approval. It then becomes the board's duty to inquire into the correctness of the taxpayer's valuation of his property and to increase it if in its judgment it is just to dó so, and where the undervaluation appears to have been willfully made to escape taxation it is the board's duty to report that fact to the grand jury.  Section 4268, Code of 1906 (section 6902, Hemingway's Code).  Moreover section 4305, Code of 1906 (section 6939, Hemingway's Code) provides that— "At the meeting for the hearing of objections to assessments, the board of supervisors shall not only hear and determine all objections that shall be filed, but it shall as well carefully examine the roll or rolls, and shall then and there cause to be assessed any person or thing that may be found to be omitted, and anything found to be undervalued may be correctly valued."

The identical property here sought to be back-assessed was enumerated and valued on the assessment roll when the original assessment was passed on by the board of supervisors, and the correctness *vel non* of that valuation was a question which it was the duty of the board to then determine, and when determined it became final and conclusive against both the public and the appellees.  Section 7, section 135, Laws of 1918; *Yazoo, etc., Investment Co.* v. *Suddoth,* 70 Miss. 416, 12 So. 246; *State* v. *Simmons,* 70 Miss, 501, 12 So. 477; *Adams* v. *Bank,* 108 Miss. 346, 66 So. 407; *Darnell* v. *Johnson,* 109 Miss. 570, 68 So. 780.  To hold otherwise would not only violate the statute but would subject the citizen to the inconvenience and uncertainty of having his assessment reopened at any time in the future, within the period of limitation, upon the charge that he had intentionally undervalued his property when listing it with the assessor.  Such a condition of affairs would be intolerable and not within the contemplation of the law.

But if we should hold that the original assessment of this property is void, the result would be the same, for the assessment was in fact made and the property did not in fact escape taxation.  This point was expressly decided in

*Adams* v. *Luce,* 87 Miss. 220, 39 So. 418, where it was said:

"The words 'escaped taxation,' under the construction of the revenue law, should receive the meaning usually and popularly accorded to them. The evil to be remedied demonstrates this. The object of the law, in respect to the back-assessment of property by the revenue agent, was to prevent property which had not been actually assessed at all from escaping its proper portion of the public burden of taxation. Property may escape taxation in varied ways, as, for example (a) by being willfully withheld from assessment by the owner; (b) by being inadvertently or accidentally omitted by the owner in returning his property to the assessor. In either of these two cases, and in others which may be conceived, there has been in fact—there has been actually—escape of such property from taxation; it has never been assessed at all as a matter of fact. And it was the purpose of the law, in cases like these, where the regularly constituted fiscal officers had failed to assess all property liable to taxation, to authorize the revenue agent to back-assess such property never heretofore in fact assessed at all, and which was, therefore, described as property which had in fact escaped taxation. But where an assessment has in fact been made, where the assessment roll shows on its face all that it ought to show—the name of the owner, the description of the property, the valuation of the property, the tax, etc.—but that assessment is irregular or imperfect or defective, or even absolutely and utterly void, by reason simply of a failure to comply with some vital and fundamental requirement of the law, such property cannot, within the meaning of these words, 'escaped taxation,' be said to be property which has escaped taxation in fact. In such cases, manifestly, there has been an assessment—an assessment in fact, an actual assessment. The property has not been withheld from the assessment roll. It has not been omitted by inadvertence, accident, or for any other reason. It is there on the assessment roll. It is assessed at a certain rate. It is all assessed. But the whole roll is void because of such failure to comply with such

fundamental requirement of the law.  There is, in such latter case, no assessment in the eye of the law; but there has been an actual assessment in fact, though not valid in the eye of the law.

We think it far safer to hold, in view of the evil to be remedied by the statute on the subject, and in view of the canon of construction that words not technical, as these words, 'escaped taxation,' ought to be given their usual, ordinary, popular signification, that property can never be said to have escaped taxation, within the meaning of the revenue law on that subject, save only in those cases where there never has been any actual assessment at all of such property.  The original thought in the statute authorizing the revenue agent to back-assess property which has escaped taxation was to furnish machinery, not initiating assessment primarily, but to supply the defects in an assessment already made.  It will not do to say that, because an assessment is utterly void in the eye of the law, though once actually made, such property has escaped taxation.  The very term 'escape,' *ex proprio vigore,* implies that it had never been found or known or listed for taxation.  That escapes detection which never has been seen in fact.  That escapes assessment which never has in fact been assessed in any way.  That which, as a matter of fact, has been returned by the owner, placed upon the assessment roll by the assessor, dealt with by the board of supervisors and by the tax collector, cannot be said, in any proper sense of the words 'escaped taxation' or within the scope of the evil to be remedied by the revenue law, to have escaped taxation.''

The case of *Adams* v. *Clarke,* 80 Miss. 134, 31 So. 216, is not in conflict, but, on the contrary, is in accord, herewith. The contention here is, not that all of the property sought to be back-assessed was not enumerated and valued when originally assessed, but simply that it was then undervalued.  And it was expressly stated several times in the opinion in that case that the approval of the assessment roll by the board of supervisors is conclusive, ''as against

the taxpayer and the public, that the valuation of the enumerated property is as finally shown on the roll." The property which the court there held had escaped taxation by reason of not having been assessed was not property that had been enumerated but undervalued on the assessment roll, but was property that had not been enumerated on the roll at all, to-wit, a part of the taxpayer's solvent credits.

*Affirmed.*

Etheridge, Holden and Stevens, JJ., dissenting, express the following views:

The replication filed by the revenue agent in this case expressly charged that appellees "did knowingly, willfully, and fraudulently, with the intent, purpose, and design to cheat and defraud the state of Mississippi and the county of Yazoo of their revenue and to enable the said bank to escape the payment of taxes justly due from it to the state and county aforesaid," make their tax returns which they now plead as *res adjudicata.* This replication charging willful and intentional fraud was demurred to, and it necessarily follows that the fraud has been admitted. We are therefore confronted with the concrete proposition whether a taxpayer can be guilty of fraud, come into court and by a solemn pleading admit the fraud, and successfully take advantage of it. We say he cannot.

This court, by Chief Justice Sharkey, in *Niles et al* v. *Anderson et al.,* 5 How. 365, at page 386 of the opinion, said: "Any act, however solemn, even though it be a judgment of a court of competent jurisdiction, may be set aside, if procured by fraud. . . . Fraud vitiates everything into which it enters. . . . Fraud gives jurisdiction to the court and lays a foundation for relief; hence a general demurrer to a bill containing such an allegation cannot be allowed. So if the defendant should plead to the bill, he must still deny the fraud by answer as well as by averment in the plea."

And in *Allen* v. *Hopson,* Freem. Ch. 276, it is said: "Fraud is equally cognizable at law as in equity."

The judgment of a board of supervisors in tax matters is, of course, ordinarily binding upon both the state and the taxpayer. No one disputes this general proposition. But how can the judgment of a board of supervisors fixing the valuation of property for taxation be any more sacred or binding than the solemn judgment of a court of law, or the decree of a court of chancery? If fraud vitiates a solemn judgment at law, it will vitiate the judgment of an equalizing board.

In speaking of the jurisdiction of special tribunals in taxation matters, it is stated in Ency. of Pleading & Practice, vol. 21, p. 443, as follows:

"The exclusiveness of jurisdiction in special tribunals is held to relate only to the correction of errors in particular matters provided for, and does not prevent a party from resorting to the ordinary tribunals for remedy against an assessor or the assessment when the assessor or special tribunal act corruptly or with malice."

And in Ency. of Law (2 Ed.), vol. 27, p. 700, it is said: "Property which has been assessed but escaped taxation by reason of the assessment against it being illegal or void, if subject to taxation in fact, is, no doubt, assessable as omitted property under the statutes enacted for that purpose. It has also been held that where property has been grossly and fraudulently undervalued, and thus *pro tanto* escaped taxation, such statutes authorize the taxing officers to reassess it for the omitted value. In some jurisdictions the statutes expressly provide for reassessment in such cases."

The principles announced by our own court in *Adams* v. *Clarke,* 80 Miss 134, 31 So. 216, are very pertinent and in fact should control the present appeal. Our court, by Chief Justice WHITFIELD, there said:

"Suppose a taxpayer as to money returns the amount of 'money on hand, on deposit, or loaned,' $500. The revenue agent discovers that the party had on hand in

actual money 1,000, and assesses him for the additional
$500. Is the first assessment *res adjudicata?* Manifestly
not; the taxpayer has simply made a false list. He has
omitted $500 of the money he did have; it has escaped
taxation, and under Code, section 3768, the assessor can
assess it, and under the act of 1894 the revenue agent can
cause it to be assessed as money 'which has escaped taxa-
tion.' "

"Every dishonest return of taxes is not only a violation
of the law, and beside a wrong to the state, but it is the
grossest injustice to those who honestly pay their taxes.
If all citizens would take care to pay as they should, the
tax rate would be lowered, probably one-half, and property
in the hands of corporations and individuals would equally
respond to its just burdens. We have held the law aloft
as to corporate efforts at evasion, and we shall mete out
the same equal justice to the fraudulent individual tax-
payer."

The lofty banner of righteousness which the gifted jurist
raised in the Clark Case should be cheerfully followed
by the court, and the rule of fair dealing enforced against
all willful and fraudulent taxpayers. It may be conceded
that as a practical question it is difficult to prove willful
fraud and corruption in tax assessments, but with these
practical difficulties we have no concern in the present in-
quiry. No proof is necessary in the present case, as the
pleadings now stand. Fraud has been boldly admitted.
The question of the fraudulent undervaluation of property
came before the Supreme Court of Minnesota in the case
of *State* v. *Weyerhaueser,* 68 Minn. 353, 71 N. W. 265, and
72 Minn. 519, 75 N. W. 718, and the contentions of the
taxpayer carried before the Supreme Court of the United
States as reflected in *Weyerhaueser* v. *State of Minn.,* 176
U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583. In the course of
the opinion of the Supreme Court of the United States by
Mr. Justice McKenna it was said:

"If an officer omits to assess property, or grossly under-
values it, he violates his duty, and the property and its

owners escape their just share of the public burdens.  .  .
It would be very strange if the state, against a gross
undervalution of property, could not, in the exercise of its
sovereignty, give itself a remedy for the illegal deficiency."

For the reasons thus briefly indicated, we unhesitatingly
dissent from an affirmance in this case—the product *of an*
equally divided court.