CITY OF ST. LOUIS v. IRENE NICOLAI, Appellant.—13 S. W. (2d) 36.

Division One, December 31, 1928.

*Caulfield & Bartlett* for appellant.

832

*Julius T. Muench* and *Oliver Senti* for respondent.

GANTT, J.—This is a suit on a special tax bill for street improvement, issued by the city of St. Louis in its own favor against real property within its corporate limits and owned by the defendant.

The benefit or taxing district was established, and the letting of a contract for the improvement of the street was authorized, by ordinances duly enacted by the city, pursuant to the provisions of its charter.

The petition, with the special tax bill attached as an exhibit, is in the usual form for the enforcement of a special tax bill issued by the city of St. Louis, for proportionate cost of construction of a street adjacent to the defendant's property. It alleges the enactment of the ordinances mentioned; the making of a contract for the improvement; the completion of the work; the defendant's ownership of the property; the issuance of the special tax bill; the particulars of the special tax bill; notice of its issuance; that demand for payment had been made, and concludes with a prayer for judgment for the amount of the bill, with interest and costs, and that the same be declared a special lien upon defendant's real estate described therein.

The defendant filed a special demurrer, which was overruled. Defendant refusing to further plead, judgment was for the plaintiff, and defendant appealed.

The special tax bill upon which this suit is based is in all respects the same as other special tax bills whose validity we have repeatedly upheld, except that, instead of being issued to the contractor in payment of the work, the city paid the contractor and issued the bill to itself, so that it might be reimbursed by the collection of the bill.

I. Defendant contends "that the enactment of the ordinances and the issuance of the special tax bill pursuant thereto are unauthorized."

We have uniformly upheld the right of a city or municipality to charge the cost of public improvements to private property in the neighborhood. In Heman Construction Co. v. Wabash Railroad, 206 Mo. 172, 104 S. W. 67, we said:

"Under the law of this State, as declared by the higher courts, it is well settled that special assessments for local improvements are a constitutional exercise of the taxing power (Garrett v. St. Louis, 25 Mo. 505; Heman v. Allen, 156 Mo. 534; Barber Asphalt Paving Co. v. French, 158 Mo. 534, S. C. 181 U. S. 324), and that 'it is within the power of the Legislature of the State to create special taxing districts, and to charge the cost of local improvements, in whole or in part, upon the property in said district, either according to valuation or superficial area of frontage.' [Webster v. Fargo, 181 U. S. 394; Prior v. Construction Co., 170 Mo. 439; Asphalt Paving Co. v. French, supra; Spencer v. Merchant, 125 U. S. 345; Egyptian Levee Co. v. Hardin, 27 Mo. 495.]"

Similar rulings have been made by this court so many times, both before and since the above-mentioned case was decided, that the right of the city of St. Louis to issue special tax bills against private property for public improvements when authorized by its charter is no longer open to question. Specific authority to issue special tax bills against private property for the improvement of public streets and for the establishment of benefit or taxing districts therefor, is contained in Article XXII of the Charter of the City of St. Louis. The method of issuing special assessments for public improvements under the charter and ordinances adopted pursuant thereto is governed by Article XXIII. Among the provisions of this article are the following:

"Section 1. For all special assessments for public work or improvements under this charter and ordinances adopted in pursuance thereof, special tax bills shall be prepared and signed by a person designated by the board of public service by resolution entered on its record, and shall be made payable to the parties entitled, either at the collector's office or at some bank or trust company in the city, at the option of the party so entitled. They shall be promptly registered and certified both in the office of said board and of the Comptroller by persons designated by said board and by the Comptroller respectively to make such registration and certificate, and then delivered by the Comptroller to the parties entitled and their receipts taken therefor; and the city shall not be liable in any manner for any work or improvement to be paid for in special tax bills.

"Section 4. All special tax bills shall be prima-facie evidence of what they contain and of their own validity, and no mere informality or clerical mistake in any of the proceedings leading to the issuance of or in any special tax bill shall be a defense thereto; provided, that if the work was not done in a good and workmanlike manner according to the class of work mentioned in the contract, the property charged with the payment of said bill shall be liable only for the value of such work done, and the recovery on the special tax bill shall be reduced accordingly.

"Section 5. All special tax bills shall be a first lien on the property charged therewith from the day of issuance thereof; . . .

"Section 7. Special tax bills and the lien thereof may be assigned and the place of payment thereof changed to the office of the collector or to any bank or trust company in the city. . . .

"Section 12. The city by ordinance recommended by the board of public service may, from time to time, make further provision by ordinance, not inconsistent with this charter, for special assessments, the issuance of special tax bills therefor, the collection thereof, and all matters incidental thereto."

Heretofore public improvements have been paid for in the city of St. Louis by issuing special tax bills payable to the contractor, the bills being collected by him or his assignee. In the instant case the city paid the contractor for the work out of a fund appropriated from the general revenue to pay for the improvement as it progressed and reimbursed itself for said expenditure by issuing this special tax bill payable to itself. The authority for this method of paying for the improvement is said to be found in Section 4 of Article XXIV, as follows:

"For the purpose of anticipating the levy and collection of any special assessment for any public work or improvement, the Board of Aldermen may, by ordinance recommended by the Board of Public Service, appropriate a fund to pay for the work or improvement as it progresses, and reimburse the city either by the issue and sale of local improvement bonds as in this article provided, or by the collection of such special assessments."

The right of the city pursuant to the foregoing provisions of the charter to issue special tax bills to the contractor, which he or his assignee may collect and which constitute a lien upon the property against which they are issued, is not disputed, the contention of defendant being that the city has no authority under Section 4 of Article XXIV to issue special tax bills payable to itself in order that it may be reimbursed for having paid the contractor for the work.

The question has not been ruled by this court. However, Jellif v. Newark, 48 N. J. L. 101, was a suit to set aside the assessment of a

special tax bill levied in the identical manner as in the present case. Ruling the question it was said:

"The prosecutors have assigned for reversal the following reasons:

"First. Because it appears, from the report thereof, that the assessment of said repaving was made in accordance with the provisions of the charter of the city of Newark, approved March 11, 1857, and its supplements; that by said charter and its supplements the power of the common council of said city to repave streets exists only when more than one-half of the property-owners on the line of the street proposed to be repaved shall petition the common council of said city therefor, and assessments are authorized only when necessary to raise money for the cost of said improvement; that no petition for said repaving, as required by the charter or supplements, was ever presented to the common council of said city; nor is said assessment made, as provided in said charter, for the purpose of raising moneys to pay the cost of said work, but the moneys expended in said improvement have already been raised by a general tax, and said improvement has been paid for in that way." [l. c. 102.]

Overruling the contention, it was said:

"The first reason presents no difficulty. The laws on which this assessment rests are the charter of Newark with its supplements, and 'An act relating to the improvement of streets and the construction of sewers in cities of this State,' passed March 27, 1882. [Pamph. L. p. 190.] Treating all these laws as valid, and considering them together, they provide (Pamph. L. 1882, p. 190, sec. 2) that streets may be repaved without the consent of the property-owners; (Sec. 1) that the money needed for such improvements may be raised in advance by general tax, and (Secs. 5 and 6), that assessments for the benefits derived from such improvements may be afterwards levied on the real estate benefited, in conformity with the provisions of existing laws in force in the city where the improvements are made. This, according to the first reason, is the procedure adopted in making the present improvement assessment." [L. c. 105.]

The city of Elkhart v. Wickmire, 121 Ind. 331, was an action to annul and enjoin assessments against certain property for the construction of a sewer. One of the allegations of the bill (l. c. 333) was "that the work was fully completed on the 13th day of May, 1885, accepted by the appellant and fully paid for out of its city treasury."

In reversing the judgment, which was against the city, it was said:

"The fact that the work was completed and paid for by the city out of its general fund worked no prejudice to the appellees. It could make no difference to them whether they paid to the contractor or to the city.

"The ordinances provided how the assessments should be made and the proportion that should be paid by the property-holders and by the city; declared the assessments liens upon the property, and provided the manner in which the assessments should be collected.

"If the city saw proper to pay the contractors and levy the assessments in installments, thereby rendering it less burdensome for the property-holders to pay their assessments, the city ought not to be prejudiced thereby. The ordinances did not provide in whose name the precepts should issue, but, if necessary, the law will treat the city as an equitable assignee of the assessments, and allow the precepts to issue in the names of the contractors for the use of the city. But we are unable to see any good reason why the assessments might not be made for the benefit of the city, and precepts issued in its name; the payment by the city did not discharge the assessments as against the property-holders, and as the money is due to the city we can see no good reason why precepts might not thus issue. The statute provides that the assessment may be enforced in such manner as the Common Council may provide."

In this connection defendant directs attention to part of Section 1 of Article XXIII of the Charter, as follows:

". . . And the city shall not be liable in any manner for any work or improvement to be paid for in special tax bills."

Attention is also directed to part of Section 4 of said article, as follows:

". . . Provided that if the work was not done in a good and workmanlike manner according to the class of work mentioned in the contract, the property charged with the payment of said bill shall be liable only for the value of such work done, and the recovery on the special tax bills shall be reduced accordingly."

It is contended the tax bill having been issued to the city, the defendant is denied the defense afforded by Section 4, for the reason the city is exempted from liability under Section 1.

We are unable to agree to this contention. The exemption is to protect the city from liability to the contractor or his assignees if the bills issued to the contractor are held to be invalid, or if the bills are reduced for the reason the work is not done in a good and workmanlike manner. Under the Charter the city may pay for the improvement by issuing tax bills to the contractor, or it may pay the contractor for the work as it progresses from the general revenue, and, on completion of the work, issue tax bills to itself. If the city elects to pay for the work from the general revenue and issues tax bills to itself, the owners of the property have the right to defend against the tax bills if the work was not done as provided in Section 4. The rights of the defendant are identical under either method of payment. The contention is overruled.

838

II. But defendant contends "that the ordinances and tax bill take defendant's property for public use without just compensation and in violation of Section 21 of Article II of the State Constitution."

The preceding section of the same article of the Constitution prohibits the taking of private property for private use. Of this section, in Heman v. Schulte, 166 Mo. 409, l. c. 418, 66 S. W. 163, we said:

"To that part of defendant's answer stricken out, wherein it is alleged that 'the tax levied and assessed under the said ordinances against the property of the defendants herein, is an attempt to take the private property of defendants for an alleged public use in violation of Section 20 of Article II of the Constitution of the State, and to deprive defendants of their property without due process of law in violation of Section 30 of Article II of the Constitution of the State of Missouri, and of Article XIV of the Amendments of the Constitution of the United States,' all that need be said at this time is, that it is the mere statement of a legal conclusion by the pleader, and not one of facts upon which the court is asked to apply its conclusion of the law. But independent of that consideration, it is difficult to see how the provisions of Section 20 of Article II of the Constitution of this State . . . could in any way have been violated in the levy and assessment of the taxes in question, or of what application it could have to the proceedings.

"That provision of the Constitution clearly refers to and is intended to regulate the right of eminent domain, whereas, special assessments for local improvements, such as we are now called upon to consider, are referable to and sustained under the taxing power solely. Wherein defendants have been denied due process of law, or wherein they have failed to receive the prescribed notice of the assessment in question, defendants' brief is as wanting of a definite suggestion as their answer is of a definite allegation, so we will presume that they have abandoned all claims of wrong on that account."

What we there said applies with equal force to the contention that the ordinances and special tax bill issued pursuant thereto constitute a taking of defendants' property for a public purpose, in violation of Section 21 of Article II. Moreover, the defendant's property is not being taken for a public use.

In Barber Asphalt Paving Co. v. French, 158 Mo. 534, l. c. 548, 58 S. W. 934, we said:

"But in taxing the citizen with his proportionate share of the cost of a pavement abutting on his lot, there is no taking of property for public use."

In 44 Corpus Juris, 490, the general rule is stated as follows:

"It has been declared by many courts that the levy of special assessments or special taxes for local improvements, being an exercise of the taxing power and not an exercise of the power of eminent domain, does not constitute a violation of a constitutional prohibition against taking private property without compensation, which, of course, is the rule where the assessments do not exceed the benefits."

The contention is overruled.

III. Defendant also contends that the ordinances violate the due process clause of the State and Federal constitutions. We have quoted from Heman Construction Co. v. Wabash Railroad, 206 Mo. 172, where it is held that under the laws of this State special assessments for local improvements are the constitutional exercise of the taxing power, and from Heman v. Schulte, 166 Mo. 409, l. c. 418, holding that said assessments for local improvements do not violate the due-process clause of the State and Federal constitutions.

In 44 Corpus Juris, 489, the rule is stated, as follows:

"While it is of course essential to the validity of legislation providing for assessments for public improvements that it shall not violate the organic law of State and Federal government prohibiting the taking of property without due process of law, it has very generally been held that these provisions do not prohibit special assessments on property specially benefited by a public improvement, although as hereinafter shown particular legislation has been successfully attacked on the ground that the property owner was not given sufficient notice and opportunity to contest the correctness and validity of the assessment."

In French v. Barber Asphalt Paving Co., 181 U. S. 325, 45 L. Ed. 879, the constitutional limitations upon the right of municipalities to issue special tax bills against private property for public improvements was fully discussed in an opinion sustaining the validity of a special tax bill for the improvement of a street in Kansas City. In the later case of Gast Realty & Improvement Co. v. Schneider Granite Company, 240 U. S. 55, 60 L. Ed. 523, although the particular special tax bill then before it was held invalid because of an inequality in the method provided for apportioning the cost of the improvement, the Supreme Court of the United States (60 L. Ed. l. c. 525) said:

"The Legislature may create taxing districts to meet the expense of local improvements and may fix the basis of taxation without encountering the Fourteenth Amendment unless its action is palpably arbitrary or a plain abuse."

This contention is also overruled.

It follows that the judgment should be affirmed. It is so ordered. All concur.