CITY OF ST. LOUIS v. SENTER COMMISSION COMPANY ET AL., Defendants, ADA REALTY COMPANY, Appellant.

CITY OF ST. LOUIS v. SENTER COMMISSION COMPANY ET AL., Defendants, FRED L. CORNWELL, Appellant.

CITY OF ST. LOUIS v. SENTER COMMISSION COMPANY ET AL., Defendants, JOHN S. LEAHY, Appellant.

CITY OF ST. LOUIS v. SENTER COMMISSION COMPANY ET AL., Defendants, SCOTT BUILDING & INVESTMENT COMPANY, a Corporation, Appellant.

CITY OF ST. LOUIS v. SENTER COMMISSION COMPANY ET AL., Defendants, THE HOLLAND CORPORATION and HOLLAND BUILDING & INVESTMENT COMPANY, Corporations, Appellants.—84 S. W. (2d) 133.

Court en Banc, June 5, 1935.

1210

*Leahy, Saunders & Walther* for appellants.

1212

*Charles M. Hay, John T. Hicks* and *James B. Steiner* for respondent.

PER CURIAM:—This is a proceeding under the charter of the city of St. Louis in.which appellants' property was assessed for benefits from the widening of Market Street. Appellants were not defendants in the condemnation suit as none of their property was taken or damaged. Jurisdiction for the assessment of the benefits taxed against their properties depends upon the sufficiency of the notice giving the boundaries of the proposed benefit or taxing district published by the commissioners and appointed by the circuit court to determine the damages in the condemnation suit and to assess benefits to property resulting from the improvement. Defendants filed exceptions to the commissioners' report in which benefits were assessed against their respective properties. The court overruled these exceptions and entered judgment against the property of appellants, for the amount of benefits approved, and they have appealed therefrom. Regardless of the amount involved this court has jurisdiction of these appeals, which have been consolidated here, because of constitutional questions raised.

The condemnation suit authorized by ordinance of the city was begun by the filing of a petition in the Circuit Court of St. Louis on November 16, 1922, at the October Term, 1922, of that court. The petition was based upon Ordinance No. 31656, approved April 18, 1922, which became effective May 18, 1922. The ordinance is entitled:

## "ORDINANCE 31656.

"An ordinance for the establishment, opening and widening of a highway extending from Third street westwardly along Walnut street to Sixth street and from said Sixth street westwardly along Market street to Vandeventer, providing for the vacation of a certain part of Market street and directing the condemnation of private property for the opening and widening of said highway."

Section 1 of the ordinance ordains: "There is hereby established a public highway and avenue from Third street westwardly to Vandeventer avenue, the lines thereof to run as follows," etc. Then follows a description of the lines for the widening of Market Street from 60 to 100 feet, and providing that the two city blocks lying between Eighteenth and Twentieth streets and Market and Chestnut streets, Nos. 894 and 903 (opposite Union Station), should be acquired for the street widening. The lines thus established extend from Third and Walnut (the eastern terminus of the widened street) to Vandeventer Avenue, at the western terminus.

The ordinance then provides: "*In addition* to the land and areas embraced within the lines of said highway, as hereinbefore established, there is hereby further established, as parts of and to be included within said highway, certain parcels of land lying and being situate in the City of St. Louis and embraced within the following described boundary lines," etc. Then follow descriptions of six separate parcels of land which are, according to appellants' statement, outside the lines of the street as widened from 60 to 100 feet.

Section 2 provides that part of Market Street lying south of and adjacent to city block 3918 E. is "hereby vacated and abolished."

Section 3 of the ordinance instructs the city counselor to bring action in condemnation, "pursuant to the charter of the city of St. Louis, for appropriation of private property for the establishment, opening and widening of said highway along Walnut Street and Market Street, as hereinbefore ordained in section 1 of this ordinance, and for the vacation of that part of Market Street as described in section 2 thereof."

On October 23, 1923, at the October Term, 1923, the court appointed three commissioners to ascertain the values, damages and benefits by reason of the improvement established by the ordinance. On November 8, 1923, the commissioners published a notice in the St. Louis Times, in which Ordinance No. 31656 is described as ordaining an improvement "for the establishment, opening and widening of a highway extending from Third Street westwardly . . . to Vandeventer Avenue, and providing for the vacation of a certain part of Market Street." The notice stated that the commissioners would meet November 26, 1923, "for the purpose of ascertaining and assessing the values of, and the damages and benefits to, private property, with respect to said improvement," and gave the

boundaries of the benefit or taxing district established by the commissioners. The district was bounded on the east by the Mississippi River, on the west by the western limits line of the city; on the north by Franklin Avenue and Delmar Avenue, and on the south by Chouteau to Grand and thence southwardly to Arsenal and westwardly on Arsenal to the city limits.

After the commissioners were appointed, and while they were holding their sessions, Ordinance No. 35582 was enacted and approved January 26, 1927. That ordinance is entitled:

"Ordinance 35582.

"An ordinance amending Ordinance thirty-one thousand six hundred fifty-six entitled 'An ordinance for the establishment, opening and widening of a highway extending from Third Street westwardly along Walnut Street to Sixth Street and from said Sixth Street westwardly along Market Street to Vandeventer Avenue, providing for the vacation of a certain part of Market Street, and directing the condemnation of private property for the opening and widening of said highway.' "

Section One of this ordinance provides that Ordinance No. 31656 "Is hereby amended by striking out Section One of said Ordinance and inserting in lieu thereof two new sections to be known as Sections One and One-A respectively, relating to the same subjects and which shall read as follows: Section One—There is hereby established a public highway and avenue from Third Street westwardly to Vandeventer Avenue, the lines thereof to run as follows, to-wit," etc. The line of the widened street as set out in this ordinance alters the line of the street as defined in Ordinance 31656, at the northeast corner of Eighteenth and Market streets, in city block 495, and also in the neighborhood of Jameton and Market streets.

Section One-A reads: "In addition to the land and areas embraced within the lines of said highway as hereinbefore established there is hereby further established, as parts of and to be included within said highway, certain parcels of land lying and being situated in the City of St. Louis and embraced within the following described boundary lines, to-wit," etc. Then follow descriptions of seven parcels of land, six of which describe the same tracts as the descriptions of the six additional parcels which were described in Section One of Ordinance 31656. The parcel numbered fifth in Ordinance 35582, in city block 1712, is the additional parcel which was not included in Ordinance 31656.

The following changes in the lines of the new widened street were made by the amending ordinance at the two places stated above.

First: By the original Ordinance No. 31656, at the northeast corner of Eighteenth and Market streets it was proposed to cut off a triangular area having a front or base on Eighteenth Street of forty feet, by a depth along the north line of Market Street of 290 feet

2¾ inches to its apex. By the amending ordinance it was proposed to cut off a triangular area having a front or base of twenty feet on Eighteenth Street, by a depth along Market Street of 162 feet. The actual reduction in the area was from 5,800 square feet to 1,620 square feet. By the amending ordinance there were three parcels of property off of which a part was to be taken at this location, for convenience in this litigation designated as Items 65, 66 and 67 of the commissioners' report.

Second: By the original ordinance the proposed cut at the location near Jameton and Market was forty feet. By taking a forty-foot strip off of the south side of Market Street there was left remaining a strip of Jesse McDonald's property eight inches wide, by its depth of about one hundred and one feet and nine inches. By the amending Ordinance No. 35582 that remaining strip of eight inches was taken. In the original ordinance the so-called six additional parcels are not given a separate section number. In the amending ordinance the said parcels are given a particular section number, 1-A, and described, in addition to the original six parcels, the remaining eight-inch strip of the McDonald property.

No amended petition was filed in the condemnation suit after the adoption of Ordinance 35582, but the city entered into stipulations with four property owners whose property was affected by the changes provided by this ordinance, wherein these property owners (who were defendants in the suit and had been served with process) agreed that the petition might be amended with respect to their property in accordance with Ordinance 35582. On April 25, 1927, the commissioners published a second notice, in which they designated themselves as having been appointed commissioners "in the matter of the proposed public improvement ordained by Ordinance No. 31656, as amended by Ordinance No. 35582," and gave notice that they would meet on May 9, 1927, for the purpose of ascertaining and assessing the values of, and the damages and benefits to private property, with respect to said improvement, and that said commissioners have established, with respect to said proposed improvement, the benefit or taxing district. The boundaries of the taxing district given in this second notice, as having been established for the improvement ordained by Ordinance 31656 as amended by Ordinance 35582, were exactly the same as the boundaries of the district established by the commissioners and set out in their first notice dated November 8, 1923.

On November 20, 1928 (six and one-half years after the taking effect of Ordinance 31656) the commissioners filed their report. The assessments against the appellants' properties are as follows:

Item 1920 against Frederick L. Cornwell, owner of a parcel of land in city block 483 ................................$4,500.00

Item 1512 against Scott Building Investment Company, owner of a parcel of land in city block 190........................$2,880.00

Item 1599-T against Ada Realty Company, a corporation, owner of a parcel of land in city block 503 ...................$1,625.00

Item 1319 against The Holland Corporation and Holland Building & Investment Company, corporations, lessee and sublessee, respectively, of a parcel of land in city block 182............$ 696.00

Item 1320 against The Holland Corporation and Holland Building & Investment Company, a corporation, lessee and sublessee, respectively, of a parcel of land in city block 182............$ 696.00

Item 903 against John S. Leahy, owner of a parcel of land in city block 85........................................$1,152.00

Within twenty days after the filing of the report of the commissioners, to-wit: On December 8, 1928, which was one of the days of the December Term, 1928, each of the appellants duly filed its exceptions to the commissioners' report. The exceptions of each of the appellants are identical, except for the difference in the names of the exceptors, the item numbers of the report, the descriptions of the property owned by each, and concerning which the exceptions were filed, and the amounts of the assessments. Thereafter, on June 25, 1930, at the June Term, 1930, the exceptions of the respective appellants were heard together by agreement of counsel, before Honorable Robert W. Hall, the judge of the circuit court presiding in Division No. One. By consent of counsel the said hearing on said exceptions was combined in a joint bill of exceptions.

At the outset of the hearing counsel for exceptors (appellants here) offered an objection to the jurisdiction of the court with respect to the subject matter of the action, calling attention to the fact, first, that the petition filed November 16, 1922, is insufficient to state a cause of action or initiate a condemnation proceeding under the St. Louis Charter; secondly, that the report of commissioners recites that they proceeded under Ordinances 31656, approved April 18, 1922, and 35582, approved January 26, 1927, although the commissioners were appointed October 29, 1923; that the report shows that the benefit district was laid out by the commissioners and notice of it published prior to the adoption of the second ordinance and that an additional notice was published April 26, 1927, long after the commissioners had begun their work under their appointment; that there never was any amended petition filed making this second ordinance, under which the commissioners reported they acted, a part of these proceedings, and that the assessment of benefits attempted to be made against the property of the appellants is void, the court having no jurisdiction to entertain the report based on the second ordinance.

Appellants offered Ordinance No. 33252, entitled, "An Ordinance establishing a public plaza to be known as Memorial Plaza in City

Blocks 489, 490, 491, 492, 499, 500, 501, 505, 209-E and 209-W, and directing the institution of condemnation proceedings for the acquisition of property for the establishment of said plaza and providing for the vacation and abolishment of Thirteenth Street from Chestnut to Market, Johnson Street southwardly from Market, and of the alleys in said block for the same purposes,'' the ordinance having been approved July 10, 1924. Counsel for appellants stated that the offer was made for the purpose of showing that the property included in Memorial Plaza was private property at the time the commissioners in the Market Street widening made their assessment of benefits; that the commissioners in the Market Street widening have omitted entirely from the benefit district this property included in the Plaza ordinance; that the Plaza condemnation proceedings have not yet been consummated, so that at any time before the final judgment in the Memorial Plaza case the city may dismiss that proceeding. That, as a result of the omission of his property from the Market Street benefit assessment, there has been an unjust discrimination against all of the other property in the benefit district as defined by the Market Street commissioners, the Memorial Plaza property having been included in the benefit district as defined by the Market Street commissioners in both notices published by them. Appellants also offered in evidence the petition in the case of City of St. Louis v. Pope (for the condemnation of the Memorial Plaza), filed January 24, 1925; also the record showing the appointment of commissioners in the Memorial Plaza case on February 19, 1927, and the commissioners' notice of the taxing district for Memorial Plaza, dated March 2, 1927. This taxing district includes a large portion of the property in the Market Street widening taxing district. The report of the commissioners in the Memorial Plaza case was filed July 27, 1928. Appellants also offered to prove that at the time the first notice was published in 1923 by the Market Street widening commissioners, all of the property sought to be appropriated by the Memorial Plaza condemnation suit was private property. It was agreed that a list, to be prepared by the first deputy comptroller, showing the dates when the city acquired by purchase property for the Memorial Plaza, should be offered. This list shows dates of purchase of 102 separate tracts commencing April 21, 1926, and ending June 25, 1930.

It was agreed by counsel that the commissioners, in making their valuations and assessing damages and benefits adopted as the date of valuation the effective date of the ordinance, May 18, 1922. In making the offer of the fact of date of valuation, counsel for appellants stated that the purpose of the offer was to present the objection that the assessments in suit are invalid because the provision of the charter providing that the assessments should be made on valuations as of the date of the taking effect of the ordinance, is un-

constitutional, being in violation of the provisions of Sections 20 and 21 of Article II of the Missouri Constitution and of the Fourteenth Amendment to the Constitution of the United States. The court sustained the assessment of benefits made by the commissioners, as above set out, except the last item, No. 903, which was reduced one-half. Facts shown by the evidence offered on the issue of the amount of benefits assessed will be stated after appellants' constitutional and jurisdictional contentions have been considered.

Appellants' first constitutional contention is that the provisions of Section 5, Article XXI of the St. Louis charter are unconstitutional because they conflict with Section 21, Article II of the Constitution of Missouri. Appellants point out that this section of the charter provides that "commissioners shall . . . assess damages and benefits as of the date said ordinance becomes effective;" and that in the Constitution it is provided that: "Private property shall not be taken or damaged for public use without just compensation . . . ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner or into court for the owner, the property shall not be disturbed or the proprietary rights of the owners therein divested." Appellants say that, by the charter, the commissioners are directed to find the value of the property and the amount of damages thereto thirty days after the passage of the ordinance authorizing a suit for condemnation (effective date of ordinances, Sec. 19, Art. IV, St. Louis charter); that ascertainment of compensation at that time, which would be prior to the commencement of the condemnation suit, would not comply with the Constitution; but that, to meet the requirements of the constitutional provisions, compensation to property owners must be determined at the time of the actual taking of the property. However, so far as the issues in this case are concerned, it makes no difference whether or not appellants' construction of the constitutional provision as to damages is correct, because damages are not involved in this proceeding. It is the method of raising money to pay part of the cost of the improvement which is involved here. Section 21 of Article II of the Constitution is not the authority for assessment of benefits. The authority for assessing benefits is the power to levy taxes. [Newby v. Platte County, 25 Mo. 258; State ex rel. C., B. & Q. Railroad Co. v. Kansas City, 89 Mo. 34, 14 S. W. 515; City of St. Louis v. Buss, 159 Mo. 9, 59 S. W. 969; City of St. Louis v. Brinckwirth, 204 Mo. 280, 102 S. W. 1091; Schwab v. St. Louis, 310 Mo. 116, 274 S. W. 1058; Kansas City v. Jones Store Co., 325 Mo. 226, 28 S. W. (2d) 1008.] Assessing damages is the ascertainment of compensation to be paid for property taken under the State's power of eminent domain; assessing benefits is the determination of the proportion to be paid by property owners of the

cost of making a public improvement (of which cost damages is one item) under the State's power of taxation. Taxing property for that purpose is not taking it for public use. [St. Louis v. Nicolai, 321 Mo. 830, 13 S. W. (2d) 36; 44 C. J. 490, sec. 2819.]

So far as the Constitution is concerned, benefits do not have to be determined as of the same date as damages. Benefits are based on estimates of the effect of improvements, at the time of completion, to increase the value of property (usually over what it was when the proceedings were begun), and not upon the immediate effect of the mere proposal to make them. [44 C. J. 481-4, secs. 2807-9, pp. 583-7, secs. 2982-8.] However, property owners have no constitutional grounds for complaint if a later date is selected. (See discussion in other Senter Commission Company case decided concurrently herewith.) Appellants say that, if damages are assessed upon erroneous values, benefits are affected thereby, since, actually, benefits are in proportion to the amount of damages. Nevertheless, if the property owners who are entitled to damages are satisfied as to the amount, property owners who are assessed only for benefits cannot complain, since the amount of damages could be agreed upon between the property owners and the city, and, at least, in the absence of unfair, unreasonable, or arbitrary action, those assessed only for benefits would have no right to object. [See State ex rel. Tuller v. Seehorn, 246 Mo. 568, 1. c. 583-4, 151 S. W. 724.] Appellants' first contention is, therefore, overruled.

Appellants' second constitutional contention is that the St. Louis charter provides only for notice of the boundaries of the taxing district and of the time and place at which the commissioners will assess damages and benefits, and does not provide for any hearing thereon; and that this is not sufficient to meet the requirements of due process of law of our State and Federal Constitutions. The fundamental distinction, above noted, between benefits and damages also answers this contention. It is not necessary to sue a man and bring him into court in order to levy taxes against him or to make such taxes a lien upon his property. [See St. Louis v. Brinckwirth, 204 Mo. 280, 102 S. W. 1091; Albers v. St. Louis, 268 Mo. 349, 188 S. W. 83.] What is essential is that he have an opportunity for a hearing upon the validity and reasonableness of the assessment before the taxes finally become a lien upon his property. The same commissioners, who make the findings of fact as to damages to be paid to those who are defendants in the condemnation suit, may also be authorized to fix the proportion of the tax levied against each tract to pay these damages, by assessing benefits, but in doing so they are not acting in the judicial proceeding for condemnation against these property owners, whose property is not being taken (only taxed) and who are not parties to the suit. This power of the commissioners to assess benefits comes from the taxing power dele-

gated to the city, while their authority to find facts as to the amount of damages sustained by each defendant property owner comes from the judicial power of the court. The taxing power to pay for public improvements is, merely as a matter of convenience, exercised through officers appointed to perform other functions in connection with proceedings to obtain property for public improvements. [See Schwab v. St. Louis, 310 Mo. 116, 274 S. W. 1058; St. Louis v. Brinckwirth, 204 Mo. 280, 102 S. W. 1091.] An opportunity for a hearing in court is provided, for any property owner desiring it upon exceptions to the commissioners' report, before a final judgment for benefits is rendered (Secs. 6-7-8, Art. XXI, St. Louis Charter); that is all due process of law requires. [Security Trust & Safety Vault Co. v. City of Lexington, 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204; Weyerhaueser v. Minnesota, 176 U. S. 550, 20 Sup. Ct. 485, 44 L. Ed. 583, and cases cited.] In fact, the charter does provide also that the commissioners shall "hear the evidence submitted by the parties interested" on benefits (Sec. 5, Art. XXI, St. Louis Charter). Appellants' constitutional objections to the charter provisions cannot be sustained.

■ Appellants contend that, even if the charter provisions are constitutional, the proceedings do not show compliance with charter requirements. Appellants' first contention concerning this matter is that the original ordinance for widening Market Street (No. 31656) contains two separate and distinct subjects, in violation of Section 13, Artivle IV of the charter, namely: "The establishment, opening and widening of a highway extending from Third Street westwardly along Walnut Street to Sixth Street and from said Sixth Street westwardly along Market Street to 'Vandeventer" and "the vacation of a certain part of Market Street." There might be some merit in appellants' contention, concerning two subjects, if one street was to be widened and another street was to be vacated or even if one section of the same street was widened and another section completely abandoned. However, under this ordinance Market Street as widened continued over substantially the same route as before. Nowhere was any section of Market Street closed. Only a small triangular strip was involved; 117 feet 6¾ inches long, less the twenty feet wide at any point, containing 320 square feet. It was located at a place, where there was a jog in Market Street, and this small portion of the north side of the street was to be vacated in order to make a wide curve, starting farther east .than the original turn thereby eliminating a sharp turn. It was not shown that any damages were paid for vacating it. If it was not vacated the street would have been more than 100 feet wide and irregularly shaped there, by retaining a useless part of its original area. Merely cutting off one corner of a sharp turn in the old street can hardly be considered as a separate project from the establishment of a new highway, about

three miles in length, suitable for modern motor traffic. We hold that it was a part of the whole single subject "to establish, open and widen a highway," from Third and Walnut to Vandeventer and Market, germane and properly incidental thereto, and not a separate subject. Appellants also say that the title of the ordinance is defective, in that it does not include six additional parcels of land outside the lines of the highway mentioned therein. Appellants' claim is that the ordinance was void as to them and that damages paid for them should not have been considered in assessing benefits, because they were not covered by its title. Apparently these tracts were to be a part of the widened highway. Respondents so state and we find nothing to the contrary. The ordinance itself says these six tracts are "established as parts of and to be included within said highway." We hold that the title is sufficient to cover all land taken for a highway over the route specified, and these contentions are overruled.

Appellants next contend that the petition in the condemnation suit did not state a cause of action, because it was not alleged therein that it was filed within six months after the time the original condemnation Ordinance No. 31656 became effective. Appellants further say that there was no statement, in the stipulations filed, to amend the petition after the amending Ordinance No. 35582 was passed, that they were filed within six months after the effective date of that ordinance. The court's finding of facts, in the judgment, states:

"The Court further finds that the suit for the widening of Market Street was filed within six months after the effective date of the Ordinance Number 31656, and, further, that the petition was amended pursuant to amending Ordinance Number 35582, by stipulations between the parties affected within six months after the effective date of said amending ordinance."

These findings are shown by the record to be correct and it is not even contended that anything was shown to the contrary. A petition must be written before it can be filed. How could it be alleged in the petition, at the time it was written, when it was filed? Such an allegation could only be truthfully made by amending the petition after it had been filed. We hold that the actual filing of the petition, within the required time, is all that is necessary to give the court jurisdiction.

Appellants next contend that the notices, given by the commissioners establishing the benefit district were insufficient. Appellants say first that they are insufficient because they relate to two distinct improvements, the widening of Market Street and the vacation of a part of Market Street. We have already disposed of this contention by holding that the improvements covered by the ordinance was one single project. Appellants say also that the first notice was

abandoned by the giving of the second notice. This, as well as appellants' contention concerning amendment of the original petition, is a part of and will be considered in connection with appellants' argument as to the effect of the second ordinance and other proceedings subsequent thereto.

Appellants say that the second ordinance repealed the first; that it destroyed the authority for proceeding further with the suit; that the original improvement was abandoned, by giving the second commissioners' notice; and that the appropriation by the city of the two blocks opposite the Union Station for a plaza and the payment therefor out of the proceeds of bonds voted for that purpose, when they had theretofore been included as a part of widened Market Street in both ordinances, was a repeal by implication of the ordinances authorizing the widened highway. They also say that these two blocks were not required to widen Market Street and that the city, therefore, had no right to condemn them. An amendment of a condemnation petition to make a change in the plan of improvement is governed by the rule "that the amendment must not change the issues or prejudice the rights of the opposite party." [20 C. J. 963, sec. 372.] Cases where amendments have been allowed reducing the quantity of land taken and including additional land are cited under this section. [See, also, Leavenworth Term. Ry. & B. Co. v. Atchison, 137 Mo. 218, 37 S. W. 913; St. Louis, Keokuk & Northwestern Railroad Co. v. Clark, 121 Mo. 169, 25 S. W. 192; St. Louis, Keokuk & Northwestern R. Co. v. Knapp-Stout & Co., 160 Mo. 396, 61 S. W. 300; Shell Pipe Line Corp. v. Woolfolk, 331 Mo. 410, 53 S. W. (2d) 917; 2 Nichols on Eminent Domain, 1073, sec. 402; 2 Lewis on Eminent Domain, 994, sec. 561.] The stipulations between the city and the property owners, whose land to be taken was added to or reduced in quantity, at least authorized the amendment of the petition by interlineation. The trial court made a finding that it had been amended; of course, the interlineation should have been actually made but it does not appear that anyone was deceived or prejudiced if it, in fact, was not made. The persons whose property was affected by the amendment agreed that it should be made and the effect of their stipulations was that they entered their appearance to the petition as it was agreed it should be amended. Since a slightly less amount was taken from three of these property owners and only an additional strip eight inches wide was taken from the fourth, it does not appear, either that there was a substantial change in the issues of the action, or the plan of the improvement, or that appellants' rights could have been in any way prejudiced thereby.

"A slight change in the character of the improvement as determined upon . . . . by the municipal authorities, can be made at any time during the proceedings and prior to the execution of the

improvement plan," although "a substantial alteration, such as one which materially increases the cost of the improvement, amounts to an abandonment of the proceedings, and cannot be made without the institution of new proceedings." [44 C. J. 297, sec. 2462.] "A defective order, ordinance, or record of improvement proceedings may be amended so long as there are no intervening rights which will be thereby affected. . . . The repeal of a portion of an ordinance amounts in effect to an amendment of the ordinance, the unrepealed portion of the ordinance remaining unaffected thereby." [44 C. J. 294, sec. 2459; Stumpe v. Washington (Mo. App.), 54 S. W. (2d) 731.] The ordinance in this case was amended by repealing the original section describing the property to be taken and enacting in lieu thereof a new section, which set out in full the description of all property originally described (except the small tract excluded) and the additional eight-inch strip to be taken. This method of amending an ordinance is in accord with the requirements of the city charter. [St. Louis Charter, Sec. 12, Art. IV.] Under the early decision of this court in Shaffner v. St. Louis, 31 Mo. 264, it was necessary for the commissioners to give a new notice which would inform property owners that the ordinance under which they were proceeding had been amended, but the benefit district remained the same. We hold that this amendment, which merely excluded a small portion of three tracts from the land to be taken for the highway and added thereto another short strip eight inches wide, was not a substantial change in the improvement provided for in the original ordinance and petition; and that neither this amendment of the ordinance, nor the new notice of the commissioners thereof, amounted to a repeal or abandonment of the original authority to proceed with the condemnation suit.

Can either voting bonds to pay for the two blocks in front of the Union Station, or calling them a plaza, when they were condemned as a part of the street widening project, or the payment therefor by the city with bond money, be held to repeal by implication the whole project to establish a modern trafficway three miles in length? There was no change in the amount of property condemned, and nothing was added to the cost thereof, by the bond issue. How could appellants have been prejudiced by the city paying for any part of these two block with bond money, so that there would be less property to be paid for out of benefits assessed against private property? What difference could it make to appellants whether the open space created by taking these blocks was called a part of the street or a plaza? In fact, the greater part of the south half of these two blocks was necessary for a 100-foot street. There is nothing in the original ordinance which limits the width of the new street to 100 feet, at all places, nor which requires that its whole width, everywhere, shall be paved. It is not unreasonable that, at a place where there

is unusual congestion of traffic, a wider area should be included. A change of use sometimes entitles property owners to additional damages (1 Nichols on Eminent Domain, 618, sec. 203; 1 Lewis on Eminent Domain, 419-425, secs. 219-20); but no showing is made here that damages were increased, or could be, if grass was planted on a part of these blocks instead of paving the whole area. A plaza according to Webster's Dictionary is merely an open square. [See, also 48 C. J. 1228; Kelly v. Town of Hayward (Cal.), 219 Pac. 749; Church v. Portland (Ore.), 22 Pac. 528, 6 L. R. A. 259.] At such a place on this trafficway as the St. Louis Union Station, it is reasonable to suppose that more than the regular width of the rest of the highway would be required for the traffic needs. Located, as it is, near the business district and on this arterial highway, the flow of traffic converging from different directions, the need of parking space for those who have temporary business, and all the other causes of congestion there are at such a place in a city of 821,960 population, in these days of increasing volume and speed of vehicular traffic, would surely seem to require an open space at such a gateway for both rail and motor travel in the very heart of the city. The amount of land required for street purposes is a matter of discretion to be determined by the legislative authority (in this case the Board of Aldermen) and such discretion, at least if not abused or arbitrarily exercised, is not subject to judicial review. [State ex inf. Mallett v. City of Joplin, 332 Mo. 1193, 62 S. W. (2d) 393; State ex rel. Dietrich v. Dawes, 315 Mo. 701, 287 S. W. 430; Kansas City v. Liebi, 298 Mo. 569, 252 S. W. 404; Doe Run Lead Co. v. Maynard, 283 Mo. 646, 223 S. W. 600; Southern Illinois & Missouri Bridge Co. v. Stone, 174 Mo. 1, 73 S. W. 453; Joplin Consolidated Mining Co. v. City of Joplin, 124 Mo. 129, 27 S. W. 406; Aldridge v. Spears, 101 Mo. 400, 14 S. W. 118; County Court of St. Louis County v. Griswold, 58 Mo. 175; 2 Nichols on Eminent Domain, p. 899, sec. 329, p. 1314, sec. 488.] We hold that the city had the right to provide an open area, of reasonable proportions (and we find this to be reasonable), in front of the Union Station, as a part of the new highway project to provide for the modern traffic needs of the city; and that this is true even if all of it was not intended to be paved for travel. Open spaces for light and air and to provide room for people to have a comfortable waiting place, are not, under these circumstances, an unreasonable use of part of such an area in connection with a public highway. [Sec. 1, Art. XVII, St. Louis Charter.] We further hold that neither the voting of bonds to raise funds to pay the cost of acquiring these two blocks, nor the ordinances in connection therewith repealed the ordinance authorizing the widening of Market Street.

. For the reasons stated, we find against all of appellants' constitutional and jurisdictional objections to this proceeding, and there re-

mains only appellants' contention that the benefit assessments against appellants' property are so excessive, unequal and discriminatory as to amount to a taking of property without due process of law in violation of the State and Federal Constitutions. Appellants make the same contentions as were made in the appeals decided in City of St. Louis v. Center Commission Company, 337 Mo. —, 85 S. W. (2d) 21, and adopt the appellants' brief and argument therein concerning the failure to assess property taken for the Memorial Plaza, and charging costs of the Union Station Plaza to the street widening. These contentions are ruled against appellants for the reasons stated in our opinion in that case.

█ Appellants further contend that none of the properties involved herein, except Cornwell's, which was the only one abutting upon the widened Market Street, obtained any benefit from the improvement; that the overwhelming weight of the evidence so shows; that it shows instead damage to these properties by reason of diversion of traffic from the streets on which they front; and that the benefit to the Cornwell property is not over one-third the amount assessed against it. . The evidence on the part of the city tends to show that all of the properties involved would be benefited in excess of the benefits assssed against them by the commissioners, because they were located in the downtown congested district which would be made more accessible to all the people of the city by such a wide arterial highway and that this added facility would be reflected in their market values to at least such amounts. The city's evidence tended to show, as to the Leahy property, benefits of from $32 to $40 per front foot, which would amount to from $1152 to $1440. The city's evidence tended to show, as to the Scott Building & Investment property, benefits of one dollar per square foot or $80 per front foot, which would amount to $3,200. The city's evidence tended to show, as to the Holland Building & Investment Company property, benefits of twenty-five cents per square foot, or $29 per front foot, which would amount to from $1392 to $1524. The city's evidence tended to show benefits to the Ada Realty Company property of $25 per front foot, amounting to $1625. As to all of these properties appellants' evidence tended to show that there was no benefit at all. As to the Cornwell property, the city's evidence tended to show a benefit of from $1.25 per square foot to $100 per front foot, which would amount to from $4562.50 to $5,000, while appellants' evidence placed the benefits at $1500.

We think the testimony produced by the city was substantial evidence, sufficient to uphold the findings of the commissioners. On the mere question of values depending upon conflicting evidence, the finding of the commissioners is entitled to great weight with the trial judge and, under such circumstances, the circuit court should hesitate to interfere with the commissioners' finding, although it has the right

to do so if it is convinced, by substantial evidence heard by it, that their report is wrong. However, where the circuit court has heard evidence, which does constitute substantial evidence in support of the commissioners' assessments, and approves it, the trial court's action must stand on appeal. It is only an abuse of discretion, or arbitrary action, which is not an exercise of discretion, that warrants the interference of an appellate court, and where there is no substantial evidence to sustain the commissioners' report, there would be an abuse of the discretion of the trial court if it was sustained. [City of St. Louis v. Senter Commission Co., 335 Mo. 489, 73 S. W. (2d) 389; City of St. Louis v. Rossi, 333 Mo. 1092, 64 S. W. (2d) 600; City of St. Louis v. Rossi, 332 Mo. 498, 58 S. W. (2d) 965; City of St. Louis v. Rossi, 55 S. W. (2d) 946; City of St. Louis v. Turner, 331 Mo. 834, 55 S. W. (2d) 942; City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S. W. (2d) 661.] There is no showing of arbitrary action or abuse of discretion in this case.

The judgment is affirmed. *Coles, J.,* not sitting.