PRESCOTT, WRIGHT, SNIDER COMPANY, APPELLANT, v. MELLODY-MC-GILLEY FUNERAL HOME ET AL., RESPONDENTS.—118. S. W. (2d) 499.

Kansas City Court of Appeals. June 13, 1938.

*John C. Loos* for appellant.

*Franklin D. Glore* for respondent.

SHAIN, P. J.—In this action the plaintiff seeks to recover on special tax bills issued against lot 1, block —, Linwood Park, Kansas City, Missouri.

Plaintiff's petition is in two counts. The first count is for $919.02, based upon a special tax bill for proportionate share of cost for paving Linwood Boulevard, a public street of aforesaid city, from the east curb line of Gillham Road to the south prolongation of the east line of Benton Boulevard, north of Linwood Boulevard. The

aforesaid public improvement was provided for by ordinance No. 53550 of Kansas City, Missouri, and effective February 28, 1927.

The second count of plaintiff's petition is for curbing on Linwood Boulevard and to the same points as designated in count 1. Said improvement was provided for by ordinance No. 53549 of aforesaid city and effective as of same date as designated in count 1. Amount of curbing bills is $100.27.

There is no question raised as to legality of ordinances providing for said improvements, no question as to faulty or wrongful construction, and no question raised as to plaintiff's having acquired title to the tax bills. However, the defendants by answer to plaintiff's petition make general denial and plead special defense that lot 1, *supra,* does not abut upon Linwood Boulevard, and is not, therefore, taxable for said improvements. The defendants plead in defense the "Front Foot Rule" as provided by article 8 of the Charter of Kansas City, Missouri, and state that subdivision A of section 262 of article 8 of the Charter of Kansas City, Missouri, defines the "Front Foot Rule" in language as follows, to-wit:

"The Front Foot Rule, which shall be held to mean that the required sum shall be assessed and charged against the several lots, tracts and parcels of real property lawfully chargeable therewith abutting upon both sides of the highway thereof improved, in proportion and ratably to the frontage or abutment thereon of such respective lots, tracts and parcels of land."

The defendants further answering state:

". . . that the assessment of said tax bills and each of them against lot one of Linwood Park and against defendant was erroneous and void and that said tax bills are invalid for the reason that defendant's said property does not front on Linwood Boulevard or the portion thereof improved within the meaning of said ordinances and charter provisions; that said property fronts upon Euclid Avenue, with its entrance approximately 150 feet North of the North line of said Linwood Boulevard, and that the defendant does not have the right of ingress or egress to said Linwood Boulevard over and across the intervening plot of land which is about 85 feet in width, lying between the South line of defendant's said property, and the North line of Linwood Boulevard; that the said plot of ground though originally condemned for street or boulevard purposes has never been used for that purpose but is now owned by Kansas City, and is being used by it as a park, and that it is improved by the planting of grass, ornamental shade trees, and by the installation of a uniform stone Santa Fe Trail marker thereon.

"Defendant further states that said tax bills and each of them so wrongfully assessed as aforesaid constitute a cloud upon the defendant's title to said property which should be removed."

The plaintiff joins issue to answer of defendant by general denial.

The cause was tried by the court without a jury on an agreed statement of facts.

Pertinent to matters before us for review, the agreed statement of facts, among other things, states as follows, to-wit:

". . . Between the sidewalk space on the north side of Linwood Boulevard and the sidewalk space on the east side of Euclid Avenue there was left a plot of ground about 100 feet running north and south and about 80 feet running east and west. This plot was not paved but was planted in grass and has three shade trees near but inside the sidewalks. The city has not yet paved this tract, and did some time prior to 1917 install a uniform stone marker in the middle of it containing data on the old Santa Fe Trail or Westport Road which at one time ran across this corner. The defendant's property abuts this plot of ground on the north, said plot being designated as 'B' in the map, Exhibit 'I.' Defendant's property is used for a Funeral Home and Undertaking establishment. Its only entrance and egress is from Euclid Avenue by a driveway, and it is approximately 150 feet from this entrance on Euclid Avenue to its intersection with Linwood Boulevard. The city has refused to permit defendants to construct a private driveway for ingress and egress over and across said unpaved tract shown as 'B' from defendant's south line to the said Linwood Boulevard.

"At various other places of intersection of Linwood Boulevard with streets and boulevards running north and south, the city has condemned and rounded off the corners in a wide and expansive manner; at Main Street the boulevard was widened and the corners at the northeast and northwest rounded off and paved far back making a wide entrance into Main Street; at Robert Gillham Plaza and at Gillham Road extensive land was taken on all four corners making wide and extensive intersections with Linwood; at The Paseo and Linwood, the corners were widened and paved far back, with a traffic light tower high in the air erected in the middle of the intersection. The development and outlay of the boulevard at the intersection of Euclid Avenue and Linwood Boulevard is, in general, similar to the general plan of development along the entire course of said boulevard, with the exception that the city has not actually paved all of the space which was condemned at the northeast and northwest corners of said Linwood Boulevard and Euclid Avenue. Linwood Boulevard has been beautified with wide parkways and ornamental trees along its entire course. Highway No. 40, a Federal highway, is routed over Linwood Boulevard from the eastern extremity of the boulevard, and all its traffice is carried over this street, which, together with the normal city traffic, makes Linwood one of the most heavily traveled boulevards in the city.

"Between Benton Boulevard on the east and The Paseo on the west, a distance of 15 blocks, there is no outlet to the north off of the boule-

vard which carries any appreciable amount of traffic. Most of the streets off of Linwood to the north between these points are about 30 feet in width from curb line to curb line, inside paving. The paving at Linwood and Euclid is, in general, improved similar to the general scheme and plan of the boulevard along its entire course.

"7. It is agreed that under the Charter of Kansas City, at the time this land was acquired for the boulevard, and at the present time, the Board of Park Commissioners makes the recommendations to the city council for the acquisition of boulevards, streets, parks, etc., which are in park districts, and such boulevards, streets, parks, etc., are under the jurisdiction of such department as to their maintenance, upkeep, repairs and the like."

The agreed statement of facts further states as follows:

"The defendant contends that the plot of ground marked 'B' in Exhibit 'I,' lies between its lot and the improved part of said boulevard, so that it is not abutting property liable for the payment of the paving and curbing tax heretofore assessed. The section of the City Charter which governs as to the circumstances under which city property is liable for tax bills, is Section 315, Charter of 1925, page 196 of revision of 1928, which reads as follows:

" 'Whenever any street, avenue, boulevard, parkway, or other highway of the city, upon which fronts or abuts any public park, public square, or other public property (other than another highway, parkway or boulevard) shall be graded, paved, curbed, etc. . . . and tax bills shall have been issued under the provisions of this charter, against such lands or against the city, on account of the benefit deemed to have accrued to or on account of such land, by virtue of such improvement, the city shall pay off and discharge such tax bills, or any judgments obtained against the City on account thereof.'

"The sections of the city charter which provide the method of assessing the cost of a paving improvement are as follows:

"Section 262, Article 8. 'Rules for Apportioning Assessments.'

" 'When the cost of the whole or any part of any improvement referred to or authorized in this article is to be paid for by special assessments or by special tax bills evidencing special assessments on lands deemed benefits by such improvement, such assessments shall, unless otherwise herein expressly provided and authorized, be made, levied and assessed according to one of the following rules, as herein defined, namely:

" '(a) The Front Foot Rule, which shall be held to mean that the required sum shall be assessed and charged against the several lots, tracts, and parcels of real property lawfully chargeable therewith abutting upon both sides of the highway or portion thereof improved, in proportion and ratably to the frontage or abutment thereon of such respective lots, tracts and parcels of land.'

"Section 263, Article 8. Paving, Etc.—Front Rule to Apply.

" 'In making assessments to pay for work on public streets, boulevards, parkways, and other public highways, other than for grading, or regrading, or sewers, and except as herein otherwise expressly provided, the Director of Public Works shall compute the total cost thereof, and apportion the same among the several lots, tracts and parcels of land chargeable therewith, each with its proper share thereof, as follows:

" 'Each lot, tract and parcel of land fronting or abutting on the street, boulevard, parkway, alley, or other highway being improved, shall be assessed and charged according to the front foot rule, as herein defined.'

"It is agreed that this plot of ground lying between defendants' property and the paved portion of the street was within the confines and boundaries of the lands acquired by the city in the ordinance and condemnation establishing Linwood Boulevard; and that the city has never paved said plot of ground for street or boulevard purposes and that the city has never permitted the defendant the right of ingress to or egress from its said property over and across said plot of ground.

"Either party may introduce such other evidence as they desire, in addition to but not contradictory of the foregoing agreed facts.

"John C. Loos,
"Attorney for Plaintiff.
"F. D. Glore,
"Attorney for Defendants.

"It is further stipulated and agreed by the parties hereto that the following shall be included in the agreed statement of facts and be regarded as a continuation of the foregoing, to-wit:

"Section 5, Art. 10 of the Charter of Kansas City, Missouri, for 1898; Sections 5 and 8, Art. 13 of the Charter of Kansas City for 1909 and the Sections 54 and 57 of Art. 3 of the present charter of Kansas City gave the Board of Park Commissioners power to devise and adopt a system of public parks, parkways and boulevards, and to select lands therefor and with the approval of the common council to lease, purchase, condemn or otherwise acquire such lands for parks, parkways, boulevards or other public squares.

"That Sec. 6 of Art. 10 of the Charter for Kansas City, 1898; Sec. 6 of Art. 13 of the Charter of Kansas City for 1909, and Sections 55 and 59 of Art. 3 of the Charter of Kansas City, Mo., which became effective in April, 1926, gives the Board of Park Commissioners power to superintend, control and manage all parks, parkways and boulevards belonging to or under the control of the city as well as other public grounds as may by ordinance be placed under the control and

management of said board, and the power to improve, adorn and regulate the same in such manner as it may deem best.

"Section 39 of Art. 13 of the Charter for Kansas City, Mo., 1909, gave the Board of Park Commissioners the right to place statues and monuments upon parks, boulevards and parkways.

"The Charter of Kansas City for 1898 contained the following, to-wit:

" 'Sec. 28, Art. 10: Possession of Land Taken—City Not Entitled To Until Full Payment—Decree of Title—When Title In Controversy—Payment How Made—The city shall not be entitled to the possession of any lot or parcel of property taken under the provisions of this article until full payment of the compensation therefor, as determined, be made or paid into court for the use of the persons in whose favor such judgment may have been rendered, or who may be lawfully entitled to the same; and upon such payment as aforesaid, such circuit court, or judge thereof, in which proceedings were had, shall immediately order, adjudge and decree that the title in fee to, and every other interest in the land so condemned and taken for such park, road, boulevard, avenue, or public use be divested out of such owner and other persons interested and vested forever in the city to the use of such park district or districts; and the Court shall thereupon, without delay, put the city in possession thereof,' etc.

"The same provisions are found in Section 28 of Article 13 of the Charter of Kansas City for 1909, and the same provisions are found in Section 169 of Article 6 of the Charter of Kansas City which became effective in April, 1926.

"Section 29 of Article 10 of the Revised Charter of Kansas City for 1898 contains the following:

" 'Section 29. Lands Selected To Remain Forever For Parks And Boulevards—Rules And Regulations Prescribed By Ordinance. The lands which may be selected and obtained under the provisions of this article shall remain forever for parks, parkways and boulevards for the use of all the inhabitants of said city subject to such rules and regulations as may be prescribed by ordinance of the common council upon the recommendation of the board of park commissioners.'

"The same provisions are found in Section 29 of Article 13 of the Charter of Kansas City, Missouri, for 1909. The same provisions appear as Section 58 of Article 3 of the Charter of Kansas City, Missouri, which became effective in April, 1926.

"In the Revised Charter of Kansas City, Missouri, for 1898, we find the following:

" 'Section 14 of Article 9. Land Owned By City—Tax Bills—City's Share of Cost. When the city shall own in fee simple absolute any lot or parcel of land, or hold any land not used as a street, avenue, alley or public highway, it shall out of the general fund its proper

share of the cost of any such work to be paid for in special tax bills as though a private owner of such land, but there shall be no tax bill against any land so owned or held by the city. The board of public works shall ascertain the shares for which th ceity shall be justly liable, and the amount so ascertained shall be certified to by the board of public works.' ''

The record contains the map referred to in the statement of facts. We herein include copy of said map to the end of a better understanding of admitted facts.

The issues being submitted to the trial court on agreed statement of facts, the cause was taken under advisement and the court found the issues for defendants and against plaintiff. The decree of the trial court is shown as follows:

''It is therefore ordered, adjudged and decreed by the court that plaintiff's petition herein be and the same is hereby dismissed; that the tax bills sued on, mentioned and described in Count I and Count II of plaintiff's said petition be, and the same are hereby cancelled and for naught held, and that the cloud upon the title to defendant's said property be, and is thereby removed, and that defendant recover of the plaintiff its costs and charges herein expended and that execution issue therefor.''

From the judgment and decree above set forth, the defendant has duly appealed. We will continue to refer to appellant as plaintiff and to respondents as defendant.

### OPINION.

Plaintiff under heading ''Assignment of Errors'' states as follows:

#### ''I

''The court erred in its refusal to hold that Kansas City had the exclusive control to determine how Linwood Blvd., should be improved after the land was acquired for same.

#### ''II

''The court erred in holding that defendant's lot did not abut Linwood Blvd., when it abutted Plot 'B,' so as to be liable for the paving of Linwood within the meaning of Sections 262-263, Article 8, Kansas City Charter, and in holding that Plot 'B' was not a part of Linwood Blvd., because the city had not paved it or opened it for travel, and had sodded Plot 'B' with grass.

#### ''III

''The court erred in holding that Kansas City is now the 'owner and occupant' of Plot 'B' as park property, and that such plot intervens between defendant's lot and Linwood Blvd., thereby preventing such lot from abutting on said Linwood Blvd.

EXHIBIT I

A- LOT 1 LINWOOD PARK
B- DISPUTED LOT
C- DEFENDANTS ENTRANCE
    TO EUCLID AVE.
D- SIDEWALKS
    RED DOTS  INDICATE TREES
E- RED LINES  SHOW CONDEMNATION
    BOUNDARY LINES

## "IV

"The court erred in holding that Plot 'B' is owned and occupied by the city as park property, bringing it within the class of city property described in Section 315, 1925 Charter of Kansas City, 1928 Revision, for which the city is liable to issue the tax bills against itself as the abutting owner.

## "V

"The court erred in holding that defendant's lot did not abut Linwood Blvd., so as to be liable for plaintiff's tax bills because the city has refused to permit defendant to construct a private driveway over and across Plot 'B,' from its property to the paved portion of Linwood Blvd."

The trial court appears to have not been requested to make any specific holding or finding of facts and none are shown. Further, no declarations of law are asked or given.

In the light of above, the so-called "Assignments of Error" are but the arbitrary conclusions of the plaintiff. However, we conclude that there is but one issue of fact, presented, to-wit: Does lot 1, block —, Linwood Park, so abut on Linwood Boulevard, Kansas City, Missouri, so as to be liable to lien on same for the paving and curbing of said boulevard?

The plaintiff urges application of the well established law to the effect that a city is not required to pave all land condemned for a boulevard, nor even open all parts of same for public travel. The law, as above claimed, is clearly set forth in City of St. Louis v. Senter, 84 S. W. (2d) 133, and in Carruthers v. City of St. Louis, 111 S. W. (2d) 32.

In Carruthers v. City of St. Louis, *supra,* it is declared that courts in construing plots will give effect to meaning and intent, not alone to words of dedication, but also as exhibited by the outlines of the plot.

The plaintiff cites a long line of cases in line with law to the effect that cities are not required to pave all or any part of land condemned for street purposes. These cases involving issues in ejectment, negligence and eminent domain have but little bearing on the question involved herein.

From reported cases and from matters of common knowledge, we take notice of the fact that boulevards are planned with not only travel in view, but with ideas of beautification as well. It is seldom indeed that the full width between property lines is paved. In many instances there is left between the curb of the paved portion of street and the property line not only a walk but also a space for grass plot, shrubbery and trees. However, if property owners along the street are given access to the street by means of driveways across the space between the curb and the property lines, it follows that all space be-

tween property lines is being used for street or boulevard purposes and the lots along such a street or boulevard truly abut upon same.

We conclude that in the case at bar there is an entirely different situation presented than above. In the case at bar the lot belonging to the defendants against which the tax bills are issued lies approximately one hundred feet north of the curb and pavement of Linwood Boulevard. In this space (Plot "B") one hundred by eighty feet is a grass plot planted with trees and wherein is erected a monument and over which the defendants are denied access to property. When we take into consideration the outlines of the plot in connection with the admitted facts, we conclude that Kansas City, Missouri, by its declared intent, as evidenced by the map or plot and by admissions of fact, negative the fact that what is designated Plot "B" is used, intended to be used, or permitted to be used for travel purposes, we conclude that under all of the facts and circumstances disclosed by the record in this case said Plot "B" is intended to be and by the acts and conduct of the city has been and is now dedicated to park purposes.

As is said in Jennings v. St. Louis, 257 Mo. 291, 165 S. W. 741, the legislative authority of Kansas City has exclusive control to determine the nature of its improvements and how they shall be made and how they shall be paid for and as it appears, from the evidence, that the city has determined upon using Plot "B" for park purposes and refused defendants the right to have access over any part of said plot to the property situate one hundred feet north of the pavement, it follows that defendant's lot 1, block —, Linwood Park, does not so abut upon Linwood Boulevard as to make said lot answerable for any portion of cost of paving and curbing of said street.

We conclude that the city holds the land, Plot "B", and that the same is not used as a street, avenue, alley or public highway and that, therefore, said plot comes under the provisions of section 14 of article 9, Revised Charter of Kansas City, Missouri, for 1898, *supra*.

Judgment affirmed. All concur.